**PEMBROKE REALTY & SECURITIES CORPORATION v. COMMISSIONER OF INTERNAL REVENUE.**

**LOEW v. SAME.**

**CITY BANK FARMERS TRUST CO. v. SAME (two cases).**

**Nos. 257–260.**

Circuit Court of Appeals, Second Circuit.

Aug. 4, 1941.

M. H. Blinken, of New York City, for petitioners.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and A. F. Prescott, Sp. Assts. to the Atty. Gen., for respondent.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The question presented for review by these four petitions is whether Pembroke Realty & Securities Corporation (for brevity hereafter referred to as Pembroke) is subject to surtax upon undistributed adjusted net income for the year ending September 30, 1936, under section 351 of the Revenue Act of 1934, 26 U.S.C.A. Int. Rev.Acts, page 757. The Board confirmed the commissioner's determination of Pembroke's liability. The other petitioners are the stockholders of Pembroke to whom all of its assets were distributed in liquidation during the taxable year. They were subjected to transferee liability for the corporation's surtax. Their petitions raise no additional questions. Transferee liability of the stockholders is conceded, if Pembroke is liable.

There is no dispute concerning the facts, which were stipulated. In 1929 Pembroke was incorporated under the laws of New York to engage in the business of buying and selling stock as a trader. On October 1, 1935, the beginning of the taxable year in suit, the corporation was insolvent. Operating losses had more than wiped out the entire paid-in cash capital of $325,000 for which its 3250 shares of stock were issued. Its liabilities (not including capital stock) exceeded its assets at cost by $28,646.97 and at fair market value by nearly $10,000. During the taxable year Pembroke had a net income of $87,133.21 upon which it paid an income tax in the correct amount. In September, 1936, the three stockholders voted to dissolve the corporation and distribute its assets in liquidation. This was done. At the end of the taxable year the corporation had retained nothing except sufficient cash to pay its income tax of $10,681.44 and its dissolution expenses of $4,788.22. The assets distributed in liquidation to the shareholders had a book value at cost of $43,075.69 and a fair market value at date of distribution of $83,588.04. Purporting to act pursuant to the provisions of section 351 of the Revenue Act of 1934 the commissioner assessed a deficiency surtax of $18,348.43 against Pembroke, which the Board confirmed.

Section 351(a) provides for a surtax of 30 per cent. "upon the undistributed adjusted net income" up to $100,000 of "every personal holding company". Pembroke was such a company within the definition prescribed by section 351(b) (1). The term "undistributed adjusted net income" is defined in section 351(b) (2) to mean the adjusted net income, as defined in section 351(b) (3), less a 20 per cent. deduction, less amounts used to retire indebtedness incurred prior to January 1, 1934, and less "Dividends paid during the taxable year". Section 351(b) (4) provides that "The terms used in this section shall have the same meaning as when used in Title I." Section 115(a) in Title I, 26 U.S.C.A. Int. Rev.Acts, page 703, defines "dividend" to mean "any distribution made by a corporation to its shareholders * * * out of its earnings or profits accumulated after February 28, 1913." And Treasury Regulations 86, promulgated under the 1934 Act,

state in Article 351-2 that the term "dividends" means dividends as defined in section 115(a) and does not include liquidating dividends or other capital distributions. In denying Pembroke a dividends paid credit in computing its "undistributed adjusted net income" the Board held that the distributions to its shareholders were not dividends within the meaning of this applicable section for two reasons: "There were no accumulated earnings," since its capital was impaired, citing Foley Securities Corporation v. Commissioner, 38 B.T.A. 1036, affirmed 8 Cir., 106 F.2d 731; and "the distributions were in liquidation", citing Gaston & Co. v. Commissioner, 39 B.T.A. 640.

If the case is considered as one where a personal holding company which has retained current earnings is seeking exemption from the surtax by reason of deductions which the statute permits, it is difficult to escape the Board's conclusion. Yet the result appears to us to be a patent perversion of the purpose of the statute. Section 351 was new legislation which introduced for the first time the concept of taxing a corporation upon the amount of its current earnings and profits withheld from distribution to stockholders. The legislation was enacted for the purpose of inducing personal holding companies to distribute current income by laying a penal surtax upon income which they retained. This is made crystal clear by the legislative history of the section. The reports cited in the footnote[1] recognize that the most prevalent form of tax avoidance practiced by individuals with large incomes was to transfer property to a controlled corporation—"the incorporated pocketbook" —with the result that income derived from the property would be taxed at corporation rates and no surtax would be paid by the individual, if the income was not distributed. An earlier attempt to prevent use of the corporate form to avoid surtaxes (section 104 of the Revenue Act of 1928, 26 U.S.C.A. Int.Rev.Acts, p. 375), had been found difficult to administer. In the 1934 Act, section 102, 26 U.S.C.A. Int.Rev.Acts, page 690, took the place of the earlier legislation with respect to corporations other than personal holding companies, and as to them section 351 provided for a tax

[1] Preliminary Report of a Sub-Committee of the Committee on Ways and Means, 73rd Cong. 2d sess.; Report of Committee on Ways and Means, House Rep. No. 704, 73rd Cong. 2d sess.; Report of Senate Finance Committee, Senate Rep. No. 558, 73rd Cong. 2d sess.

which "will be automatically levied" without the necessity of proving a purpose to avoid surtaxes. As stated in the Committee Reports the purpose of giving a credit for dividends paid to shareholders during the taxable year was "to prevent the additional tax from applying to sums actually distributed". That actual distribution of current income would avoid imposition of the surtax is clearly expressed in the Report of the Senate Committee on Finance:

"Many will consider the surtax imposed on these personal holding companies a harsh measure. However, a corporation which falls within this section * * * can always escape this tax by distributing to its stockholders at least 90 percent[2] of its adjusted net income."

A similar statement appears in the House Report. The arguments advanced in debating the measure point to the same conclusion. See Cong.Record 73rd Cong., 2d sess., Vol. 78, Part 3, pp. 2662, 2789. To us it appears beyond question that the Congress did not intend to impose a penalty tax upon a corporation which in fact distributed all its current earnings to shareholders. The purpose was to induce such distribution, and the tax was laid on "undistributed" income. Had Pembroke's capital not been impaired, its distribution of current income would indisputably have been a "dividend" and the corporation would not have been subject to a surtax. It is incredible, in the light of the purpose of the legislation, that a different result was intended in the case of a corporation whose capital happened to be impaired.

■ This consequence, however, is said to be inevitable because of the definition of "dividend" in section 115(a). We do not think so. A dividend is there defined as "any distribution made by a corporation * * * out of its earnings or profits accumulated after February 28, 1913." Read literally, the statute would seem to be satisfied by Pembroke's distribution to its shareholders of earnings accumulated during the year ending September 30, 1936. All that stands in the way is the gloss put upon the definition by the ruling that a corporation cannot have accumulated earnings available for a dividend so long as its capital is impaired. Ordinarily that gloss upon the statutory definition may be justified. See Willcuts v.

Milton Dairy Co., 275 U.S. 215, 218, 48 S.Ct. 71, 72 L.Ed. 247. We do not think it need be carried over into section 351. To do so results in consequences contradictory to the purposes of that section. It precludes corporate earnings actually distributed to the shareholders from being treated as dividends so as to increase their surtaxes and it penalizes the corporation for doing the very thing the statute was intended to induce it to do.

■ It is urged that support for the commissioner's position is to be found in section 109 of the Revenue Act of 1935, 49 Stat. 1014, 1020, 26 U.S.C.A. Int.Rev. Acts, page 802, and section 115(a) of the Revenue Act of 1936, 49 Stat. 1648, 1687, 26 U.S.C.A. Int.Rev.Acts, page 868, which broadened the definition of dividend to include distribution of current earnings regardless of impairment of capital. While the legislative history of these amendments shows that members of Congress supposed that section 351 had the meaning the commissioner ascribed to it, it also shows that they disapproved of it. An interpretation which was erroneous and which Congress wanted to change when it came to their attention cannot preclude the courts from exercising their function of construing the statute. In our opinion the distribution of current earnings should be deemed a dividend within the meaning of section 351, regardless of the fact that the taxpayer's capital was impaired. In so far as Foley Securities Corp. v. Commissioner, 8 Cir., 106 F.2d 731, lays down a contrary rule, we respectfully disagree with it.

■ There is, however, a broader ground on which the conclusion that Pembroke was not subject to surtax may be supported. This is the ground taken by the Tax Bureau in I.T. 3067 where it was said: "It is obvious that in the case of a complete liquidation of a corporation no income remains undistributed and, therefore, there is nothing to which the undistributed profits tax is applicable. In this situation, it is immaterial whether the prescribed distributions take the form of an ordinary dividend or a distribution in liquidation."

The Bureau was there considering the tax imposed by section 14 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, page 823, but the principle that when no

---

[2] The 10 per cent. of adjusted net income allowed by the House bill to be ac- cumulated by the corporation was increased to 20 per cent. as finally enacted.

income is retained because of complete liquidation the statute is inapplicable is equally apposite to the 1934 Act. It is within the power of the courts to declare that a thing which is within the letter of a statute is not governed by the statute because not within its spirit or the intention of its makers. Holy Trinity Church v. United States, 143 U.S. 457, 472, 12 S. Ct. 511, 36 L.Ed. 226; Lau Ow Bew v. United States, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L.Ed. 340; see, also, Helvering v. Gregory, 2 Cir., 69 F.2d 809, 810, affirmed 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. We think this principle justifies the holding that Pembroke, which distributed all of its current income in complete liquidation was not subject to the surtax provided by section 351.

Accordingly the orders are reversed.