## PIPER v. UNITED STATES.

No. 697.

District Court, D. Minnesota, Fourth Division.

May 27, 1943.

Leland W. Scott and John W. Windhorst, of Fletcher, Dorsey, Barker, Colman & Barber, both of Minneapolis, Minn., for plaintiff.

Victor E. Anderson. U. S. Atty. and Linus J. Hammond, Asst. U. S. Atty., both of St. Paul, Minn., for the United States.

NORDBYE, District Judge.

The Louise G. Piper Company was a personal holding company and was dissolved in December, 1935. The Revenue Act of 1934, Section 351, 48 Stat. 751, 26 U.S.C.A. Int.Rev.Acts, page 757, imposes a surtax of thirty per cent (30%) on the "undistributed adjusted net income" of personal holding companies. "Undistributed adjusted net income" equals the adjusted net income less certain deductions, including "dividends paid" during the tax year for which return is made.

When the company reported its income for 1935, it deducted from its "adjusted net income" $3,993.82 as dividends paid during 1935. The Commissioner of Internal Revenue refused to permit this deduction upon the grounds that the $3,993.82 was not a dividend within the meaning of Section 351 because it was included in the distribution in liquidation of the company. Plaintiff paid the deficiency assessment as sole distributee of the Louise G. Piper Company and now seeks to recover the amount of the additional tax paid, plus interest.

The parties agree that the Louise G. Piper Company paid no dividends, as such, during 1935. They also agree that the company's earnings and profits for 1935 were at least $3,993.82 and were included in the distribution to plaintiff on liquidation. They are at issue, however, as to whether a distribution in liquidation can be a "dividend paid" within the meaning of Section 351 of the Internal Revenue Act for 1935, 26 U.S.C.A. Int.Rev.Acts, page 758. The parties agree that Section 115(a), (b) and (c), 26 U.S.C.A. Int.Rev.Acts, page 703, define this phrase as it is used in Section 351, in that Section 351(b) (4) declares that "the terms used in this section shall have the same meaning as when used in Title I."

We must look, therefore, to Title I for the definition of "dividend". Section 115 (a), under Title I, defines the term "dividend" as follows: "Definition of Dividend. The term 'dividend' when used in this title * * * means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earn-

ings or profits accumulated after February 28, 1913."

█ It necessarily follows that Section 115(a) includes distribution of earnings made to a stockholder, even though such earnings are included in that which the stockholder receives in liquidation. It would seem that one is not required to proceed further in seeking the intended definition of the term "dividend". The Government points out, however, that effect must be given to Section 115(c) in applying the definition applicable to the term "dividend", and asserts that a reading of this section indicates that distribution in liquidation necessarily excludes dividends.

Section 115(c) reads: "Distributions in Liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117(a), 100 per centum of the gain so recognized shall be taken into account in computing net income. In the case of amounts distributed (whether before January 1, 1934, or on or after such date) in partial liquidation (other than a distribution within the provisions of subsection (h) of this section of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation."

█ But in considering the taxing statute which is applicable herein, it does not follow that Section 115(c) should prevail over Section 115(a), or even modify any portion thereof. Section 115(c) merely assumes to outline the method of taxing corporate distribution where complete or partial liquidation is involved. In other words, it refers to the tax liability of a distributee encompassed or embraced within the provisions of that section. Here, we are not concerned with the tax liability of Louise G. Piper as a distributee in liquidation; that is, whether she has sustained a gain or a loss. It may well be that, in any liquidation where current dividends are included in the distribution, the entire return to the shareholder must be accounted for in determining the gain or loss just the same as if the shareholder had sold his holdings on the market. Our problem, however, is to determine whether the personal holding company is liable for a tax by reason of its failure to disgorge its current earnings to its shareholders during the year 1935. In solving that problem, we need go no further than a consideration of Section 115(a) in finding an appropriate definition for the term "dividend" within the intent and purpose of Congress.

█ This is particularly true when we consider the purpose of Section 351 of the 1934 Revenue Act. The congressional history of this legislation unmistakably indicates that it was devised to drive the current income of the personal holding corporation to its shareholders. In the instant situation, this was done. That which Congress sought to achieve by the legislation was attained. In effect, however, the Government is now seeking to penalize the corporation for doing that which the statute intended to produce. The fact that the corporation liquidated at the time that the earnings were turned over to the shareholder is immaterial. No cogent reason is suggested in support of any theory which denies the right of the deduction made herein.

█ If the Government's position is upheld, we have the anomalous situation of a tax being assessed on the hypothesis that the current earnings never reached the shareholder, when the contrary is true. It may be readily conceded that every complete liquidation does not constitute the payment of dividends. But that assumption does not negate the fact that if, in liquidation, the current earnings reach the shareholder, then to the extent of such earnings the shareholder has received dividends within the meaning of the present statute. A strict construction is not called for when a common sense construction squares with the plain and obvious intent of Congress. It is true that taxing statutes are generally construed literally and strictly. Crooks v. Harrelson, 1930, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156; Crane-Johnson v. Commissioner, 8 Cir., 1939, 105 F.2d 740; Foley Securities Corp. v. Commissioner, 8 Cir., 1939, 106 F.2d 731. However, where such construction leads to absurd results, and

contrary to the obvious intent of Congress, then it would seem that a strict and literal construction should be avoided. This was the view of the Second Circuit in Pembroke Realty & Securities Corp. v. Commissioner, 2 Cir., 1941, 122 F.2d 252. This case has passed on the identical question presented herein, and has held that "dividends paid" under Section 351 of the Revenue Act of 1934 includes distributions in liquidation. In terse and clear language, this court stated (122 F.2d at page 254):

" * * * The principle that when no income is retained because of complete liquidation the statute [Section 351] is inapplicable is equally apposite to the 1934 Act. It is within the power of the courts to declare that a thing which is within the letter of a statute is not governed by the statute because not within its spirit or the intention of its makers. Holy Trinity Church v. United States, 143 U.S. 457, 472, 12 S.Ct. 511, 36 L.Ed. 226; Lau Ow Bew v. United States, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L. Ed. 340; see, also, Helvering v. Gregory, 2 Cir., 69 F.2d 809, 810, affirmed 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596, 97 A.L.R. 1355. We think this principle justifies the holding that Pembroke, which distributed all of its current income in complete liquidation was not subject to the surtax provided by section 351."

Reliance is placed by the defendant on Hellmich v. Hellman, 1928, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544, 56 A.L.R. 379. But that case must be analyzed in light of the problem presented to the Court. There, the court was concerned with the congressional purpose and intent in taxing the distributee in a complete liquidation. Necessarily, resort was made to Section 115(c) in that this section clearly outlines the method to be followed in taxing a distributee in a complete liquidation regardless of the fact that such distribution also included return of current earnings. Confronted with a clear legislative purpose to tax the gain coming to a stockholder from the distribution of assets in a complete liquidation, it was necessary for the court to read together subsections (a) and (c) of Section 115 in order to harmonize them and thus effectuate the intention of the lawmakers. In Hellmich v. Hellman, it is evident that, in harmonizing the two subsections, the court was able to effect a result which supported congressional intent. However, the only way in which congressional intent can be supported in the instant

case is to apply the definition in Section 115 (a) to the term "dividend".

 The suggestion is made that plaintiff is estopped from bringing this action, but counsel for the Government frankly state that this defense is not urged "with any great degree of assurance." It is not necessary to go into any detail regarding the situation upon which the Government bases its suggestion. It may be stated, however, that it claims no prejudice by reason of the bringing of this action, nor does it urge that plaintiff is guilty of any laches. Certainly, there are no equities which estop the plaintiff from bringing this suit. The case of Botany Worsted Mills v. United States, 1929, 278 U.S. 282, 49 S.Ct. 129, 73 L.Ed. 379, sustains plaintiff's position that no estoppel exists.

Findings of fact and conclusions of law in harmony herewith may be presented on five days' notice.