The ST. LOUIS COMPANY, a Delaware Corporation (in dissolution), Plaintiff,

v.

The UNITED STATES of America, Defendant.

Civ. No. 1527.

United States District Court
D. Delaware.

July 28, 1955.

———◆———

H. James Conaway, Jr. (of Morris, James, Hitchens & Williams), Wilmington, Del., Martin J. Oppenheimer and George Gump (of Frank & Oppenheimer), Baltimore, Md., for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Walter B. Langley, Special Assts. to the Atty. Gen., for defendant.

RODNEY, District Judge.

This matter involves a construction of a complicated series of statutory provisions of the Revenue Code as applicable to personal holding companies. No findings of fact are required as the parties have stipulated all the pertinent facts and the difficulty arises from the necessity of correlating the maze of diverse statutory provisions to ascertain the intent of Congress.

The jurisdiction of this Court is based on 28 U.S.C. § 1346(a) (1).

The determination of the present difficulty involves the following facts. The St. Louis Company is, or was prior to its dissolution, a personal holding company. A personal holding company is an entity originating under the revenue acts providing for excess profits taxes where earnings were not distributed or were unduly reserved. It has been utilized by persons of substantial means to minimize the tax on income and has been termed "an incorporated pocket book" and for these companies Congress has provided for both normal and drastic surtax with certain complicated deductions. Among the distinguishing features of a personal holding company is

the extremely limited number of stockholders. In the present case it appears that at the time of dissolution all of the stock of the plaintiff company was held by the executors of only one named person.

On or about July 1, 1948, the plaintiff filed in the Office of the Collector of Internal Revenue at Wilmington, Delaware, its personal holding company tax return for the fiscal year of July 1, 1947—June 30, 1948 and paid the alternative tax shown by said return to be due. Upon an audit of the return a deficiency was alleged and an additional tax of $31,540.29 was assessed. This assessment was paid September 14, 1950 together with interest from September 15, 1948 amounting to $3,583.49. A refund of these amounts was demanded and refused on March 30, 1951. This suit for such refund followed on March 20, 1953.

On or about June 14, 1948, the plaintiff was dissolved under the Delaware law, and on March 25, 1953 a receiver was appointed for the purpose of instituting and prosecuting the claim for refund as above outlined, and such suit was brought on March 26, 1953, and is now pending in this Court as Civil Action No. 1529. It is stipulated that the two suits involve the same facts and seek the same relief and that a determination in this case will control the determination of the other.

Two further facts remain to be stated for it is concerning them that most of the difficulties arise. It is stipulated that for the fiscal year ending June 30, 1948 the plaintiff company had earnings and profits, after taxes, of $37,766.62. It is also stipulated that on July 1, 1947 there was a deficit in the accumulated earnings and profits of $121,436.24 and that on June 18, 1948, the date of distribution in complete liquidation, the deficit amounted to $82,001.86.

The question, generally, comes down to this. The plaintiff in its return claimed and now claims that the sum of $37,766.62, being the net earnings for the fiscal year 1947–1948 and which amount was distributed in total dissolution, constituted a dividends paid credit within the terms of the Act and this credit being allowed, the alternative tax should have been $8.50 as reported. The plaintiff contends that the net earnings of $37,766.62, distributed as stated, constitutes a dividends paid credit, regardless of the accumulated deficit of earnings and profits shown at the beginning of the fiscal year in question.

The defendant, on the other hand, contends that the net earnings and profits for the fiscal year and amounting to $37,766.62 cannot, in view of the accumulated deficit of earnings and profits of $121,436.24, be allowed in total dissolution as a dividends paid credit and that said amount of $37,766.62 constituted undistributed net income in computing taxpayers alternative personal holding company tax. The deficiency was thus computed as $31,540.29.

It will be borne in mind, and in view of subsequent statutory provisions, that the present case is to be determined by the state of the law as it existed at the time the facts occurred, viz., in 1948, being largely the Revenue Act of 1939 as amended to 1948.

The plaintiff by a series of related steps seeks to trace through the statutes the conclusion that the tax return as filed by it was correct and the subsequent additional assessment against it by the Collector was erroneous. Thus, the plaintiff by detailed steps argues:

Section 501 of Sub-chapter A defines a personal holding company. Since there is no dispute as to the status of the plaintiff as such personal holding company, this section will not be further considered.

Section 500 provides a surtax on undistributed Chapter A net income (in addition to the taxes imposed by Chapter 1).

Section 505 defines the net income. With this we are not concerned since our problem concerns solely the "undistributed" net income as set out in Section 504.

Section 504 provides that the " 'undistributed subchapter A net income' " means the net income as set out in Section 505 less certain items of which we are only concerned with the item "the amount of the dividends paid credit provided in section 27(a) * * *."

Section 27(a) defines a " 'dividends paid credit' " as the sum of several items of which we are only concerned with "(1) The basic surtax credit for such year, computed as provided in subsection (b)".

Section 27(b) defines a " 'basic surtax credit' " as the sum of certain items including "The dividends paid during the taxable year * * *."

Section 115 defines dividends. Originally the Section had only one definition, viz., "The term 'dividend' when used in this chapter * * * means any distribution made by a corporation to its shareholders * * * out of its earnings or profits accumulated after February 28, 1913".[1] In 1936 a further definition was added by which a "dividend" was embraced within any distribution "out of the earnings or profits of the taxable year * * * without regard to the amount of the earnings and profits at the time the distribution was made." 49 Stat. 1687.

In 1942, 56 Stat. 896, an additional reference to dividends was added to Section 115(a), being peculiarly and solely applicable to personal holding companies. Such additional definition was substantially "In the case of a corporation * * * [personal holding company] such term [dividend] also means any distribution (whether or not a dividend as defined in the preceding sentence) to its shareholders, whether in money or other property to the extent of its Subchapter A net income, less [certain matters not here material]."

While the Personal Holding Company tax is levied under Sub-chapter A and the definitions of dividends are shown in Section 115(a) of Chapter 1, yet Section 507(a) of Sub-chapter A expressly provides that the terms used in this Subchapter shall have the same meaning as when used in Chapter 1.

Such, in effect, are the statutory provisions relied upon by the plaintiff.

The defendant (Government) agrees that if the sequence of statutory enactments as outlined by the plaintiff be accepted, and if the definition of dividends be determined by Section 115(a) alone, that the plaintiff would be entitled to the refund. The defendant insists, however, that such sections are not controlling but that the matter is to be determined by a consideration of Section 27(g). This section provides:

"In the case of amounts distributed in liquidation the part of such distribution which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the basic surtax credit under this section, be treated as a taxable dividend paid."

The defendant, generally, contends that with an impairment of capital and a deficit at the beginning of the taxable year, there can be no earnings or profits accumulated from or on account of which dividends could be paid or a "dividend paid credit" could be credited.

The end to be attained is to ascertain the intent of Congress. The Government points out that when the amendments were made to Section 115(a) that no similar or mutual amendments were made to Section 27(g).

The Government, in short, contends that distributions in liquidation are solely brought about by Section 115(c); that when total liquidation proceedings are had pursuant to Section 115(c), we then must look to Section 27(g) for the ascertainment of the surtax credit and taxable dividend paid. The Government contends that while the amendments of 1936 and 1942 to Section 115(a) gave to the term "dividends" a wider latitude,

---

1. This was the provision when Pembroke Realty & Securities Corp. v. Commissioner, 2 Cir., 122 F.2d 252 was determined.

yet since no similar amendments were made to 27(g) and since by the latter section the only criterion is accumulated earnings or profits since February 28, 1913, and that with the admitted deficit sustained by the company there are no accumulated earnings, so the plaintiff cannot prevail.

Matters almost exactly similar to the present question have been before the Courts on several occasions. In Pembroke Realty & Securities Corporation v. Commissioner, 2 Cir., 1941, 122 F.2d 252, the Court considered the statutes prior to the amendments to Section 115 (a) of 1936 and 1942. Section 115(a) then had only one definition of a dividend, viz., a distribution made out of earnings and profits accumulated since February 28, 1913, the exact provision as contained in Section 27(g), so strongly relied upon by the Government. The Court, consisting of Judges Learned Hand, Augustus Hand and Swan, unanimously concluded that the company in complete liquidation was entitled to the credit regardless of the fact that its capital was impaired.

The same result was reached in Piper v. United States, D.C.Minn.1943, 50 F. Supp. 363, and Fisher v. Kavanagh, D.C. E.D.Mich.1951, 100 F.Supp. 248.

The Government strongly relies upon Shellabarger Grain Products Co. v. Commissioner, 7 Cir., 146 F.2d 177. This was a case of partial liquidation and Congress seems to have sharply distinguished between complete liquidation, as the present case, and matters in partial liquidation, and to have laid down different rules for their governance. At any rate, the reasoning of the Pembroke, Piper and Fisher cases appeal more strongly and are unaffected by the Shellabarger case.

The Government, however, contends that the Pembroke and Piper cases were determined before the promulgation of Income Tax Regulation 111, Sec. 29.115–1, (Oct. 26, 1943 as amended June 6, 1944 by T.D. 5377). The Government contends that had this regulation been in force the conclusions reached may have been different. Fisher v. Kavanagh, D.C. E.D.Mich.1951, 100 F.Supp. 248 was decided in 1951 after the promulgation of the regulation. The regulation seems to apply to Section 115 in its entirety, both sub-sections (a) and (c). It refers expressly to "personal holding companies" and mentions expressly Section 115(a). The regulation contains the definition of "dividend" as set out in Section 115(a), but does say that "the term dividend does not include the distribution under Sec. 115(c) relating to distributions in liquidation"

While it is true that a regulation by a department of Government addressed to and reasonably adapted to the enforcement of an Act of Congress, the administration of which is confided to such department, has the force and effect of law if it be not in conflict with express statutory provision,[2] yet the power to enact regulations is not power to alter the law and the regulations have no power to amend or change existing statutory provisions.[3]

If the existing statutory law entitled the plaintiff to the relief sought, as held by the Pembroke and Piper cases, then the subsequent promulgation of the Regulation 111, Sec. 29.115–1, if contrary to that law, would not be adapted to the enforcement of that law but would be an ineffective opposition to the statutory law. As said in Independent Petroleum Corporation v. Fly. 5 Cir., 141 F.2d 189, 191:

"The power to make regulations does not extend to making taxpayers of those whom the Act, properly construed, does not tax."

I do not think the terms of Regulation 111, Sec. 29.115–1 are dispositive of the questions here presented.

2. Maryland Casualty Co. v. United States, 251 U.S. 342, 349, 40 S.Ct. 155, 64 L. Ed. 297.

3. United States v. Two Hundred Barrels of Whiskey, 95 U.S. 571, 576, 24 L. Ed. 491.

Upon the merits of the case, certain things seem clear. The plaintiff company for the fiscal year in question had earnings and profits of a considerable sum. On these earnings the corporation paid the usual corporation tax, and the question in the present case involves the disposition of the remainder of such earnings.

■ All of the authorities agree that the underlying purpose of Congress in imposing a surtax of 75% or 85% on the undistributed earnings of personal holding corporations was to compel the distribution of these earnings, so that such earnings would be liable to other provisions of the tax law. In the present case it is clear that by a complete liquidation the present plaintiff has gotten into the hands of its stockholders all of the property of the company including its current earnings, and the whole purpose of the law has been carried out.

The Government tacitly concedes, insofar as the facts of the case are concerned, if the plaintiff company on July 1, 1947 had no deficit but accumulated earnings of even an infinitesimal amount and during the ensuing year had made profits, that then on dissolution the company could have distributed the current earnings as dividends and been entitled to the "dividend paid credit". It must equally be true, it seems, that if the company on July 1, 1947 had no deficit and no accumulated earnings whatever, that the same result would follow as to current earnings upon total dissolution and distribution.

The overriding intent of Congress, it would seem, was, that insofar as personal holding companies are concerned, to compel such companies to distribute the funds on hand and to prevent their accumulation or to compel substantial surtaxes on such accumulation. There seems no discernible intent to discriminate against a company unsuccessful in past years as against one which had had some measure of success, when in both cases the overriding purpose of Congress, viz., the distribution of all funds, is accomplished. As stated in Fisher v. Kavanagh, supra, the position of the taxing authority would seem to achieve a result completely repugnant to the purposes of the Act.

■ It is not without interest that during all the years in question the Income Tax Division of the Bureau of Internal Revenue by a directive agreed with the contention of the plaintiff. From 1937 until 1954, almost a year after this case commenced, there existed this directive clearly outlining the position of the Government. In 1937, by the directive called I.T. 3067, there was recited an instance strongly analogous to the present case. After reciting all the facts, the Department concluded that the Act:

"* * * imposes a surtax on undistributed profits. The surtax is measured by the 'undistributed net income' of the corporation. Congress contemplated in the enactment of the statute an accumulation of current profits retained in fact by the corporation, a current accumulation withheld by the corporation from distribution to shareholders. It is obvious that in the case of a complete liquidation of a corporation no income remains undistributed and therefore there is nothing to which the undistributed profits tax is applicable. In this situation it is immaterial whether the prescribed distribution takes the form of an ordinary dividend or a distribution in liquidation. In view of the above it is held that in the case of the complete liquidation of the M corporation the corporation is entitled to a dividends paid credit for the year 1936 to the full extent of the earnings and profits for that year which were distributed, regardless of the fact that the corporation had an operating deficit at the beginning of the taxable year in excess of the earnings and profits for that year."

It may be true that the directive did not have the force of law, but it was the announced position and thought of the Government at the time and under the

terms of which the plaintiff liquidated and was dissolved. For over seven years and until after this suit was brought, the Government clearly announced this as its understanding of the law. With this I am in accord and the plaintiff should, I think, prevail.

Appropriate orders or forms of judgment may be submitted covering this case and the companion case, Civil Action No. 1529.