**The ST. LOUIS COMPANY, a Delaware Corporation (In Dissolution)**

v.

**The UNITED STATES of America, Appellant.**

**No. 11769.**

United States Court of Appeals Third Circuit.

Argued May 9, 1956.

Decided Sept. 24, 1956.

**152**

Helen A. Buckley, Washington, D. C., (Charles K. Rice, Acting Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., Leonard G. Hagner, U. S. Atty., Wilmington, Del., on the brief), for appellant.

George Gump, Baltimore, Md. (Frank, Bernstein, Gutberlet & Conaway, Baltimore, Md., H. James Conaway, Jr., Hering, Morris, James & Hitchens, Wilmington, Del., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

Where a personal holding company's deficit in "earnings or profits accumulated after February 28, 1913" exceeds its net income for the taxable year is a distribution out of such income, during the taxable year, in complete liquidation of the company, a "dividend" within the meaning of the dividends paid credit provisions of the Internal Revenue Code of 1939, as amended to 1948?

That is the single issue presented by this appeal from the judgment of the United States District Court for the District of Delaware in favor of the taxpayer.

The facts were stipulated and may be summarized as follows:

On or about July 1, 1948, St. Louis Company ("taxpayer") filed in the office of the Collector of Internal Revenue its federal personal holding company return under Subchapter A, Chapter 2, of the Internal Revenue Code of 1939, 26 U.S. C.A. § 500 et seq., for the fiscal year July 1, 1947, to June 30, 1948, and paid the alternative tax shown thereon to be due. The Commissioner, upon auditing the return, made certain adjustments in the computation of the alternative tax and determined a deficiency. An additional tax was assessed, and upon notice and demand for payment, the additional tax in the sum of $31,540.29 with interest from September 15, 1948, in the amount of $3,583.49, was paid by taxpayer on September 14, 1950. A claim for refund having been disallowed, taxpayer instituted this suit in March, 1953. The District Court found for the taxpayer [1] and entered judgment in favor of taxpayer on September 15, 1955 in the amount of $35,123.78, together with interest from September 14, 1950.

The adjustments made by the Commissioner were as follows: taxpayer report-

---

1. D.C.Del.1955, 134 F.Supp. 411.

ed as its net income under Subchapter A, Chapter 2 the sum of $37,766.62; claimed that amount as a dividends paid credit against the Subchapter A net income; reported its undistributed Subchapter A net income as zero, and returned as its alternative personal holding company tax the amount of $8.50. The Commissioner disallowed in full the asserted dividends paid credit and adjusted taxpayer's undistributed Subchapter A net income to $37,766.62, and computed the taxpayer's alternative tax to be $31,548.79 and its deficiency to be $31,540.29.

The Commissioner based the adjustments upon the financial condition of the taxpayer on or about June 18, 1948 when it dissolved under the laws of Delaware, and all of its assets, which were in excess of $37,766.62, were distributed to the executors of the estate of Simon Dalsheimer, deceased, who were the sole stockholders of taxpayer. There were no other distributions by the taxpayer to its stockholders during its fiscal year ending June 30, 1948. The amount of taxpayer's earnings and profits, after taxes, for the fiscal year was $37,766.62. The amount of the deficit in taxpayer's accumulated earnings and profits on July 1, 1947, was $121,436.24 and on or about June 18, 1948, was $82,001.86.

The surtax on personal holding companies is imposed by Section 500, Subchapter A, Chapter 2 of the Internal Revenue Code upon the " 'undistributed subchapter A net income' " which is defined in Section 504 as the "subchapter A net income (as defined in section 505)" minus several items. "The amount of the dividends paid credit provided in section 27(a) * * *" is the first of these deductible items and the deduction which the taxpayer here seeks to obtain. Section 27(a) defines the " 'dividends paid credit' " to include the "basic surtax credit" which is computed as provided in section 27(b) to include "The dividends paid during the taxable year * * *".

With this scheme of statutory reference both the Government and taxpayer agree, but here their paths diverge in seeking to determine the appropriate statutory direction to what is a "dividend" for purposes of the dividends paid credit.

Taxpayer contends that the term "dividend" as defined in section 115(a) of the Code is controlling [2] because these cri-

---

2. "Section 115. Distributions by Corporations.

"(a). Definition of Dividend. The term 'dividend' when used in this chapter * * means any distribution made by a corporation to its shareholders, whether in money or in other property, (1) out of its earnings or profits accumulated after February 28, 1913, or (2) out of the earnings or profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made. In the case of a corporation which, under the law applicable to the taxable year in which the distribution is made, is a personal holding company, or which, for the taxable year in respect of which the distribution is made under section 504(c) or section 506 or a corresponding provision of a prior income-tax law, is a personal holding company under the law applicable to such taxable year, such term also means any distribution (whether or not a dividend as

defined in the preceding sentence) to its shareholders, whether in money or in other property, to the extent of its subchapter A net income * * *.

"(b) Source of Distributions. For the purposes of this chapter every distribution is made out of earnings or profits to the extent thereof, and from the most recently accumulated earnings or profits * * *.

"(c) Distributions in Liquidation. Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed (whether before January 1, 1939, or on or after such date) in partial liquidation (other than a distribution to which the provisions of subsection (h) of this section are applicable)

teria were present: (1) the distribution was "out of the earnings or profits of the taxable year", (2) any distribution by a personal holding company to its shareholders is a dividend, and (3) the distribution by taxpayer was "out of its earnings or profits accumulated after February 28, 1913" in accordance with the meaning of that phrase declared in Pembroke Realty & Securities Corp. v. Commissioner, 2 Cir., 1941, 122 F.2d 252. A corporate distribution is a "dividend" for purposes of the dividends paid credit provision, says the taxpayer, under any of the circumstances stated. It further urges that section 27(g) relating to distributions in liquidation [3] is not applicable since that section is of general application and its effect on personal holding companies is nullified by that portion of section 115(a) specifically dealing with personal holding companies.

Finally, it asserts even if Sec. 27(g) is to be deemed controlling, the expansive meaning of "earnings or profits accumulated after February 28, 1913", as declared in the Pembroke case, permits allowance of the dividends paid credit.

The Government contends principally (1) the distribution was not a payment of ordinary dividends but a distribution in complete liquidation; and (2) Sec. 27 (g) contains explicit direction for computation of the dividends paid credit in such case and since the current earnings of the taxpayer were insufficient to eliminate its existing capital deficit, no part of the distribution is "properly chargeable to the earnings or profits accumulated after February 28, 1913", and, accordingly, the taxpayer is not entitled to the dividends paid credit.

We subscribe to the Government's view.

That Section 115(a) is inapplicable to this distribution is made clear by the legislative history of the "Distributions by Corporations" provisions of Sec. 115. The problem of distinguishing the ordinary dividend distribution from a distribution in liquidation was one inherent in the wording of the early Revenue Acts. See James Dobson, 1925, 1 B.T.A. 1082. The structure of the later Code provisions was established in the Revenue Act of 1924 [4] where the definition of "dividend" was distinguished from the treatment of the distribution in liquidation. The provisions of Sec. 115 herein in issue are the result of amendments by the various Revenue Acts which emphasized the difference in treatment to be accorded the two types of distribution, and it is clear that the distinguishing factor in these corporate distribution provisions is the difference between a distribution made by a going corporation and one made by a corporation in liquidation. Hellmich v. Hellman, 1928, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544. Thus under Sec. 115(c) a distribution in complete liquidation is treated as a *sale or exchange* with a resultant capital gain or loss in the hands of the distributees despite the existence of a surplus out of which dividends might have been declared. On the other hand, dividend distributions under Sec. 115(a) are treated and taxed as *ordinary income* in the hands of the stockholder distributees.

This distinction between the ordinary dividend payment by a going corporation and a distribution in liquidation is dispositive of the issue here. In the Revenue Act of 1936 Congress' awareness of the distinction moved it to add Sec. 27(f) (now 27(g)) to the existing provisions to provide relief in the form of a dividends paid credit for distributions in liquida-

---

the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits * * *."

3. Int.Rev.Code of 1939, § 27(g), 53 Stat. 21, 26 U.S.C.A. § 27(g), provides: "In the case of amounts distributed in liquidation the part of such distribu-

tion which is properly chargeable to the earnings or profits accumulated after February 28, 1913, shall, for the purposes of computing the basic surtax credit under this section, be treated as a taxable dividend paid."

4. Sec. 201, 43 Stat. 254, 26 U.S.C.A.Int. Rev.Acts, page 2.

tion out of accumulated earnings or profits.[5] At the same time the definition of "dividend" in Sec. 115(a) was expanded to include distributions "out of the earnings or profits for the taxable year * * * without regard to the amount of the earnings or profits at the time the distribution was made." Both of these amendments were included to facilitate allowance of a dividends paid credit in computing the newly imposed undistributed profits tax which was later repealed.[6] The desired result could only be attained by changing the statute with respect to the previously recognized types of corporate distribution, the ordinary dividend of the going corporation and the distribution in liquidation. We can maintain this established distinction by application of explicit provisions relating to liquidating distributions to the distribution here. Section 27(g) expressly provides the standards by which a corporation in liquidation may be granted the dividends paid credit. Since taxpayer's deficit in earnings or profits accumulated after February 28, 1913, was in excess of the amount distributed in liquidation, no part of the distribution is "properly chargeable to the earnings or profits accumulated after February 28, 1913." Thus the claimed dividends paid credit was properly disallowed by the Commissioner.

Taxpayer urges that Sec. 27(g) is of general application since it does not deal specifically with personal holding companies whereas Sec. 115(a) does deal directly with personal holding companies and specifically states that a different and broader definition of "dividend" is to be used in the case of a personal holding company than in the case of an ordinary business corporation. We need only refer to the dominating distinction discussed above. In broadening the definition of dividend to include "any distribution" by a personal holding company to its stockholders,[7] the legislative committees were explicit that the distributions by a personal holding company to stockholders did not encompass distributions in liquidation. H.R.Rep. No. 2333, 77th Cong., 2d Sess. 130–131 (1942–2 Cum. Bull. 372, 473);[8] S.Rep. No. 1631, 77th Cong., 2d Sess. 177 (1942–2 Cum.Bull. 504, 634).

Pembroke Realty & Securities Corp. v. Commissioner, supra, is cited by the taxpayer as authority for the proposition that application of Sec. 27(g) to the liquidation distribution does not bar allowance of the dividends paid credit. In the Pembroke case the Second Circuit concluded that an impairment of capital would not prevent allowance of a dividends paid credit against a distribution in liquidation out of current earnings or

5. Revenue Act of 1936, 49 Stat. 1648, 26 U.S.C.A.Int.Rev.Acts, page 838.

6. Section 14 of the Revenue Act of 1936, 26 U.S.C.A.Int.Rev.Acts, page 823, imposed this tax in the form of a surtax on undistributed profits in order to tax corporations on income not distributed to stockholders in the form of taxable dividends. Despite the later repeal of this tax, provisions relating to allowance of the dividends paid credit were retained for purposes of applying the credit to exactions similar to the undistributed profits tax.

With respect to Sec. 27(f), the Report of the Subcommittee of the Committee on Ways and Means Relative to Proposed Tax Revision, 74th Cong., 2d Sess. 6 (1936), stated:

"In computing undistributed net income, it is recommended that the corporation be allowed a deduction for any part of liq-

uidating dividends properly allocable to earnings and profits, but no deduction shall be given for the portion thereof properly chargeable for capital account."

7. Revenue Act of 1942, Sec. 186(a), 56 Stat. 798, 26 U.S.C.A. § 115(a).

8. Said the House Committee:

"The amendments made by this section provide that any distribution to shareholders *(not in complete or partial liquidation)* made on or after the date of enactment of this act by a corporation which, for the taxable year in which such a distribution is made * * * was under the applicable law a personal holding company, will now constitute a taxable dividend even if not paid out of accumulated or current earnings or profits." [Emphasis supplied.]

The Senate Committee Report contained identical language.

profits. In accord are Piper v. United States, D.C.D.Minn.1943, 50 F.Supp. 363, and Fisher v. Kavanagh, D.C.E.D.Mich. 1951, 100 F.Supp. 248. On the basis of the Pembroke decision it is urged a dividends paid credit is allowable despite the existence of a capital impairment since the distribution by taxpayer was not in excess of current earnings and may properly be charged to the "earnings or profits accumulated after February 28, 1913". The Pembroke holding expanded the meaning of distributions "out of earnings or profits accumulated after February 28, 1913" to include distributions out of current earnings.[9] Such a holding, in our opinion, is contrary to the settled meaning of this phrase. See Foley Securities Corp. v. Commissioner, 8 Cir., 1939, 106 F.2d 731, and cases cited; Van Norman Co. v. Welch, 1 Cir., 1944, 141 F.2d 99; Fowler Bros. & Cox v. Commissioner, 6 Cir., 1943, 138 F.2d 774; Commissioner v. W. S. Farish & Co., 5 Cir., 104 F.2d 833, certiorari denied 1939, 308 U.S. 559, 60 S.Ct. 91, 84 L.Ed. 469; cf. Helvering v. Credit Alliance Corp., 1942, 316 U.S. 107, 111, 62 S.Ct. 989, 86 L.Ed. 1307.

We think the correct rule is stated in Helvering v. Credit Alliance Corp., supra, 316 U.S. at page 111, 62 S.Ct. at page 991, where the Court, in discussing another facet of a problem involving application of Section 27(g) (then § 27(f)) stated:

"Section 27 deals with a credit to the distributing corporation and *the phrase finds its proper office in limiting the amount of the distribution in liquidation which may be considered a dividend from earnings or profits as distinguished from one composed of capital.*" (Emphasis supplied.)

This principle has been applied in Shellabarger Grain Products Co. v. Commissioner, 7 Cir., 1944, 146 F.2d 177; and Addressograph-Multigraph Corp., 4 CCH Tax Ct. Mem. 147, Issue X, 184 (1945); cf. Foley Securities Corp. v. Commissioner, supra; Brooklyn National Corp. v. Commissioner, 1945, 5 T.C. 892, affirmed, 2 Cir., 157 F.2d 450, certiorari denied, 1946, 329 U.S. 733, 67 S.Ct. 96, 91 L.Ed. 634.

The Government's view of the statute is further supported by the administrative regulations interpreting the pertinent section. U.S.Treas.Reg. 111, Sec. 29.27(g)–1(a) provides:

"To the general rule that an allowance for dividends paid is permitted only with respect to taxable dividends paid, section 27(g) makes one exception, namely, for that part of an amount distributed in liquidation which, under the Internal Revenue Code, constitutes a distribution of, and is properly chargeable to, earnings or profits accumulated after February 28, 1913."

The amount "properly chargeable to the earnings or profits accumulated after February 28, 1913" is determined by deducting " * * * from the amount of the distribution that part allocable to capital account". U.S.Treas.Reg. 111, 29.27(g)–1(b). Recognizing the settled distinction between the ordinary dividend and the liquidating distribution, the interpretative regulations promulgated under Section 115(a) provide that "[t]he term 'dividend' does not include distributions under Section 115(c), relating to distributions in liquidation * * *". U.S.Treas.Reg. 111, Sec. 29.-115–1.

I.T. 3067, 1937–1 Cum.Bull. 91, published in 1937, holds on facts similar to

---

9. At the time of the liquidation in the Pembroke case (1936), Sec. 115(a) contained only one definition of a dividend. Despite the fact that dividends were restricted to distributions "out of its earnings or profits accumulated after February 28, 1913", the court declared that carrying over the settled meaning of this phrase to the personal holding company section would result in "consequences contradictory to the purposes of that section". 122 F.2d at page 254. Compare Sec. 507(a) of the Code which provides: "The terms used in this subchapter shall have the same meaning as when used in chapter 1."

these " \* \* \* that in the case of a complete liquidation of a corporation no income remains undistributed and, therefore, there is nothing to which the undistributed profits tax is applicable." While the logic of this conclusion appears sound, we find nothing in the Code to support such a result so that we are not bound by this opinion. Cf. Hackett v. Commissioner, 1 Cir., 1946, 159 F.2d 121. In view of the decisions in the Shellabarger and Addressograph-Multigraph cases, supra, the Internal Revenue Service has revoked its former ruling and now holds:

" \* \* \* a corporation, with impaired capital, should be allowed a dividends paid credit within the meaning of section 27(g) of the Internal Revenue Code only to the extent that distributions in complete or partial liquidation from current year's earnings exceed the existing deficit." [10]

█ It is recognized that Congress imposed the prohibitive surtax on personal holding companies to destroy the tax advantages accruing to such companies, and to drive them out of business. Since complete liquidation accomplished the desired result in this case, taxpayer urges that imposition of the tax would be contrary to the intent of Congress and destructive of the purpose of the personal holding company provisions. The District Court points out the inequity of imposing the surtax on taxpayer in this situation in 134 F.Supp. 411, at page 415:

"The overriding intent of Congress, it would seem, was, that insofar as personal holding companies are concerned, to compel such companies to distribute the funds on hand and to prevent their accumulation or to compel substantial surtaxes on such accumulation. There seems no discernible intent to discriminate against a company unsuccessful in past years as against one which had had some measure of success, when in both cases the overriding purpose of Congress, viz., the distribution of all funds, is accomplished."

See also Pembroke Realty & Securities Corp. v. Commissioner, supra, 122 F.2d at page 254, and Piper v. United States, supra, 50 F.Supp. at page 365.

However, arguments based upon inequity are beyond judicial cognizance where the statute does not remedy the inequity, nor can we extend the meaning of the statute to embrace matters for which no provision has been made. The Supreme Court has affirmed this principle in United States v. Olympic Radio & Television, Inc., 1955, 349 U.S. 232, 236, 75 S.Ct. 733, 736, 99 L.Ed. 1024, where it said:

"This taxpayer argues the inequity of the results which would follow from our construction of the Code. But as we have said before, 'general equitable considerations' do not control the question of what deductions are permissible. Deputy v. du Pont, supra, [308 U.S.] at page 493 [60 S. Ct. 366]. It may be that Congress granted less than some thought or less than was originally intended. We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit."

The Revenue Acts enacting the various Internal Revenue Codes and the amendments thereto have been the results of constant scrutiny and experience under previous Acts. Efforts are made continuously, on the one side, to close the gaps through which taxpayers have escaped untaxed, and, on the other to provide relief for the taxpayer in a hardship position. Corrective legislation with respect to the taxing statute has been the continuous duty of the legislative branch. Certain areas of the Code have been phrased in broad terms which sometimes prove provocative of judicial legislation. However, detailed sections of the Code have left little room for the engraftment of judicial addenda to the end of making

10. Rev.Rul. 54–71, 1954–1 Cum.Bull. 71, 72.

a "better" statute. A more literal interpretation of the statute consistent with the established meaning of the previously used legislative wording is the only method compatible with such detail. The provisions of the Code relating to the personal holding company present a detailed procedure for determining the amount of surtax imposed upon these entities singled out by Congress for burdensome tax treatment. The detail and strictness of the provisions have resulted in hardship and apparent inequity in several situations. See American Package Corp. v. Commissioner, 4 Cir., 1942, 125 F.2d 413, 140 A.L.R. 642; Noteman v. Welch, 1 Cir., 1939, 108 F.2d 206; Foley Securities Corp. v. Commissioner, supra; Saxon Trading Corp. v. Commissioner, 1941, 45 B.T.A. 16; cf. Helvering v. Northwest Steel Rolling Mills, Inc., 1940, 311 U.S. 46, 61 S.Ct. 109, 85 L.Ed. 29. Relief of hardship requires legislative correction not judicial legislation. We think the reasoning of the Supreme Court in Crooks v. Harrelson, 1930, 282 U.S. 55, at page 60, 51 S.Ct. 49, at page 50, 75 L.Ed. 156, is singularly appropriate:

> "Courts have sometimes exercised a high degree of ingenuity in the effort to find justification for wrenching from the words of a statute a meaning which literally they did not bear in order to escape consequences thought to be absurd or to entail great hardship. But an application of the principle so nearly approaches the boundary between the exercise of the judicial power and that of the legislative power as to call rather for great caution and circumspection in order to avoid usurpation of the latter. Monson v. Chester, 22 Pick. 385, 387. It is not enough merely that hard and objectionable or absurd consequences, which probably were not within the contemplation of the framers, are produced by an act of legislation. Laws enacted with good intention, when put to the test,

frequently, and to the surprise of the law maker himself, turn out to be mischievous, absurd, or otherwise objectionable. But in such case the remedy lies with the law making authority, and not with the courts." [11]

We once observed that the personal holding company provisions of the Code pronounced the "death sentence" against the use of such corporations. Sanford Corp. v. Commissioner, 3 Cir., 1939, 106 F.2d 882, 883, certiorari denied, 1940, 309 U.S. 659, 60 S.Ct. 513, 84 L.Ed. 1007. At times the execution is grievously painful.

For the reasons stated the judgment of the District Court will be reversed with directions to proceed in accordance with this opinion.

11. See Int.Rev.Code of 1954, Sec. 562, 26 U.S.C.A. § 562, for the legislative answer to this problem.