THE BROOKLYN NATIONAL CORPORATION (IN LIQUIDATION), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5959.   Promulgated October 9, 1945.

*Meyer Kraushaar, Esq.*, and *John Scott Stella, Esq.*, for the petitioner.

*E. E. Strickland, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined a deficiency of $8,047.33 in personal holding company surtax for the calendar year

1941. The issues for decision are whether the petitioner was a personal holding company during 1941 and, even if it was, whether it was liable for any personal holding company surtax in view of the fact that it was dissolved during the year and made a substantial distribution towards complete liquidation. A stipulation of facts was filed.

The petitioner is a corporation, organized in June 1929 under the laws of Maryland. It filed a personal holding company return for the calendar year 1941 with the collector of internal revenue for the first district of New York.

More than 50 percent in value of the outstanding stock of the petitioner was owned directly or indirectly by not more than five individuals during 1941. More than 80 percent of its gross income for the calendar year 1941 consisted of personal holding company income as defined in section 502 of the Internal Revenue Code.

The petitioner had no accumulated earnings or profits on January 1, 1941, but had a deficit at that time in the amount of $72,100.29. Its operations during the taxable year resulted in a net loss of $30,518.06. One of the items going to make up this loss was a net long term capital loss of $43,083.93. Its subchapter A net income for 1941, within the ·meaning of section 505 (a), was $4,367.80.

The petitioner has been engaged in the purchase, holding, and sale of securities. This business has not proven successful. The stock of· the petitioner was offered for sale to the public when it was organized in 1929. There were in the beginning about 500 stockholders, but this number was reduced by the petitioner buying its own stock until there were only 333 stockholders at the end of 1941. The directors of the petitioner discovered in 1940 that more than 50 per centum of the value of the outstanding stock was owned directly or indirectly by not more than five individuals. They realized that as long as the capital was impaired, dividends could not be paid under the law, and if dividends were not paid, the corporation might be taxed as a personal holding company. The stockholders adopted a resolution in November 1941 dissolving the corporation and authorizing its liquidation, including the distribution of its assets, within three years from the date of the resolution. Articles of dissolution filed with the State Tax Commission of Maryland were approved on Decmeber 15, 1941.

The petitioner paid liquidating dividends to its stockholders in the amount of $133,980 in each of the calendar years 1941, 1942, and 1943. The assets remaining at the end of 1943 consisted of cash in the amount of $19,818.60, real estate of the value of $5,965.38, and prepaid insurance of $66.57. The sole asset of the corporation held at the end of 1944 was cash in the amount of $25,685.64.

It is obvious that the petitioner comes within the definition of a personal holding company given in section 501. Its stockholdings and its income bring it precisely within that definition and the petitioner makes no contention to the contrary. The petitioner argues, nevertheless, that the imposition of a personal holding company surtax upon it for the calendar year 1941 is a hardship which Congress never intended. This Court has no authority to hold that the petitioner does not come within the definition of a personal holding company because it was not originally formed as such a company, because it still had several hundred stockholders in 1941, or because of the circumstances under which the stock owned by five individuals became more than 50 percent of the total stock outstanding. This would not be the first case where there might be apparent hardship. Cf. *O'Sullivan Rubber Co.*, 42 B. T. A. 721; affd., 120 Fed. (2d) 845; *Pembroke Realty & Securities Corporation* v. *Commissioner*, 42 B. T. A. 341; reversed by the Circuit Court of Appeals for the Second Circuit, 122 Fed. (2d) 252; *A. G. Fides*, 47 B. T. A. 280; affd., 137 Fed. (2d) 731; certiorari denied, 320 U. S. 797; *Foley Securities Corporation*, 38 B. T. A. 1036; affd., 106 Fed. (2d) 731; *Porto Rico Coal Co.*, 44 B. T. A. 221; affd., 126 Fed. (2d) 212. Congress has written this definition clearly and this Court has no authority except to apply the law as it is written.

The petitioner does not deny that it had a small amount of "Subchapter A net income" within the definition contained in section 505, despite its operating loss. But it argues that a very large distribution which it made in that year should be subtracted from the subchapter A net income in determining "undistributed Subchapter A net income," and, since the distribution far exceeded the income, the result is that there is no "undistributed Subchapter A net income" and, consequently, no personal holding company surtax for the year. It relies heavily upon the opinion of the Circuit Court of Appeals for the Second Circuit in *Pembroke Realty & Securities Corporation*, *supra*, reversing an opinion of this Court.

Undistributed subchapter A net income is defined as subchapter A net income, minus, *inter alia*, the amount of the dividends paid credit provided in section 27 (a) without the benefit of paragraphs (3) and (4) thereof. The dividends paid credit of this petitioner provided in section 27 (a), without the benefit of paragraphs (3) and (4) thereof, is "the basic surtax credit for such year, computed as provided in subsection (b)." The basic surtax credit, as defined in subsection (b), is, so far as this petitioner is concerned, the dividends paid during the taxable year. No contrary contention is made. The term "divi-

dend," as used in the foregoing sections, is defined in section 115 as any distribution out of the earnings or profits accumulated after February 28, 1913, or out of the earnings or profits of the taxable year. See section 507. The petitioner had neither earnings or profits accumulated after February 28, 1913, nor earnings or profits of the taxable year. Therefore, the distribution which it made in 1941 was not a dividend within the meaning of section 27 (b). It was, on the contrary, a distribution in liquidation within the meaning of that term as used in section 115. Thus, without writing something into the law, which we have no authority to do, we can not reduce the subchapter A net income of the petitioner by the liquidating distribution made in 1941 so as to leave no undistributed subchapter A net income.

The appellate court in the *Pembroke* case held that a distribution in liquidation was a dividend which reduced subchapter A net income in arriving at undistributed subchapter A net income, and, further, that where a corporation distributed all of its current income in complete liquidation, no undistributed income remained and, consequently, it was not subject to the personal holding company surtax. There are certain differences between the facts in the present case and those relied upon by the appellate court in the *Pembroke* case. The petitioner in the *Pembroke* case had current earnings during the taxable year, and those earnings rendered it solvent, whereas the operations of this petitioner for the year had resulted in a loss. Also, the appellate court stated that Pembroke had distributed all of its assets in liquidation so that at the end of the taxable year the corporation retained nothing except sufficient cash to pay its income tax and its dissolution expenses. The present petitioner retained assets at the close of the taxable year far in excess of those needed to pay its tax and dissolution expenses. It spread its liquidating distributions over three years. Perhaps these differences serve to distinguish the Pembroke case. But, if they do not, then, with all due respect to the Circuit Court of Appeals for the Second Circuit, to which an appeal in this case will lie, we decline to apply the *Pembroke* case here, because we think its application would be contrary to the law as written by Congress.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

ARUNDELL, J., dissents on authority of *Pembrooke Realty & Securities Corporation* v. *Commissioner*, 122 Fed. (2d) 252.