MICHAEL C. CALLAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

THOMAS J. CALLAN, JR., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 6025–68, 6026–68.    Filed July 22, 1970.

*Minot W. Tripp, Jr., Samuel Taylor*, and *Robert M. Winokur*, for the petitioners.

*John Gigounas*, for the respondent.

### OPINION

RAUM, *Judge*: The Commissioner determined deficiencies of $13,943.28 and $671.86 in the income and personal holding company tax of Callan Investment Co. for the taxable year ended Febraury 28, 1965, and for the taxable period March 1, 1965, to March 12, 1965, respectively. He further determined that petitioners, as transferees of the assets of Callan Investment Co., were jointly and severally liable for the foregoing amounts, plus statutory interest. The only question for decision is whether payments of $19,918.98 and $959.82 made on March 27, 1968, by Callan Investment Co. qualify for the deficiency dividends deduction authorized by section 547, I.R.C. 1954. The facts have been stipulated .

Petitioners, Michael C. Callan (Michael) and Thomas J. Callan, Jr. (Thomas), were brothers, and hereinafter they will sometimes be referred to collectively as the Callans. Michael and Thomas each

filed Federal income tax returns for the calendar years 1965 through 1968 with the district director of internal revenue at San Francisco, Calif. At the time the petitions herein were filed, both of the Callans resided in Hillsborough, Calif.

Michael and Thomas each owned 50 percent of the capital stock of Callan Investment Co., a corporation, hereinafter sometimes referred to as the corporation. The corporation was incorporated under the laws of the State of California, and it filed its Federal income tax returns for the taxable year ending February 28, 1965, and for the taxable period March 1 through March 12, 1965, with the district director of internal revenue at San Francisco, Calif.

On April 10, 1964, at a special meeting of the corporation's board of directors, the directors adopted the following resolutions to dissolve:

WHEREAS, it is deemed advisable and for the best interests of this corporation and its shareholders that it wind up its affairs and voluntarily dissolve,

NOW, THEREFORE, BE IT RESOLVED that the President of the corporation be, and he hereby is, authorized and directed to procure the written consent and election of shareholders representing more than 50% of the voting power of the corporation to the winding up of the affairs and voluntary dissolution of the corporation, and to the adoption of a plan of complete liquidation of the corporation providing for distribution of all of the property of the corporation (less a reasonable amount of assets retained to meet claims) within the 12-month period beginning on the date of the adoption of the plan of complete liquidation.

FURTHER RESOLVED, that if the shareholders of the corporation shall so elect to wind up the affairs and voluntarily dissolve the corporation and in connection therewith adopt the aforesaid plan of liquidation, the President and the Secretary of the corporation be, and they hereby are, authorized to sell or exchange all of the assets of the corporation and all of its furnishings to such person or persons or corporation or corporations and upon such terms as they may deem advisable and to take the necessary steps to accomplish the distribution of all the corporation's property to the shareholders of the corporation, in cancellation of the stock of the corporation and the liquidation of the corporation within the 12-month period beginning on the date of the adoption of the plan of complete liquidation, and they are hereby authorized to file on behalf of the corporation the certificate and give the written notice required by §§ 4603 and 4605 of the California Corporations Code.

FURTHER RESOLVED, that the officers of the corporation be, and they hereby are, authorized to execute and cause to be filed with the Internal Revenue Service all of the documents required to be filed by the corporation in connection with the liquidation of the corporation pursuant to § 337 of the Internal Revenue Code of 1954 and in connection with the dissolution of the corporation.

FURTHER RESOLVED, that upon commencement of voluntary proceedings for the winding up of the corporation, the corporation shall cease forthwith to carry on business except to the extent necessary for the beneficial winding up of the affairs thereof; and that written notice of the commencement of the winding up of the affairs of the corporation be given to all shareholders and to all known creditors and claimants of the corporation.

1516

FURTHER RESOLVED, that the officers of this corporation be, and they hereby are, authorized and directed to take any action to execute any and all certificates, instruments and other documents and to do any and all things necessary or proper to carry out the purposes of the foregoing resolutions.

On the same date, the Callans, as the corporation's sole stockholders, adopted the following plan of complete liquidation:

1. The corporation shall proceed to wind up its affairs and dissolve at the earliest practicable date; but, in any event, within the 12-months' period beginning on the date of the adoption of this plan, all of the assets of the corporation shall be distributed to its shareholders in complete liquidation, less a reasonable amount of assets retained to meet claims.

2. The undersigned do hereby further direct the officers and directors of said corporation to take such further action as may be necessary or proper to wind up the affairs of said corporation, including, but not limited to, the sale or other disposition of some or all of the assets of the corporation on terms which the Board of Directors deem appropriate, to dissolve it and to distribute its assets to its shareholders as aforesaid.

A completed Form 966 ("Return of Information to be Filed by Corporations Within 30 Days After Adoption of Resolution or Plan of Dissolution, or Complete or Partial Liquidation") was filed with the district director of internal revenue at San Francisco, Calif., on May 7, 1964.

On March 12, 1965, the corporation was dissolved, and all of its assets and liabilities were distributed equally to Michael and Thomas in exchange for all of their capital stock. As a result of this exchange, Michael and Thomas each received cash and assets with a fair market value of $420,084.51 from the corporation, and the corporation retained no assets. On the same date, the corporation filed a "Certificate of Winding Up and Dissolution" with the secretary of state of California. It provided as follows:

MICHAEL C. CALLAN, THOMAS J. CALLAN, JR., and LORRAINE CALLAN certify:

1. That they constitute all of the authorized number of directors of CALLAN INVESTMENT CO., a California corporation.

2. That said corporation has been completely wound up.

3. That said corporation's known debts and liabilities have been actually paid.

4. That said corporation's known assets have been distributed to the shareholders.

The parties have stipulated that the corporation was a "personal holding company" for the taxable year ending February 28, 1965, and for the taxable period March 1 through March 12, 1965, and that it had "undistributed personal holding company income" in the amount of $19,918.98, for the fiscal year ending February 28, 1965, and $959.81, for the period March 1 through March 12, 1965.

In early 1968, nearly 3 years after the 1965 distributions, the corporation and the Commissioner agreed that the corporation was liable

for personal holding company tax in the amounts of $13,943.28 and $671.86 for the two taxable periods involved herein, and for additional income tax in the amounts of $6,185 and $270.72 for the same two periods. The agreement was set forth on a completed Form 2198, "Determination of Liability for Personal Holding Company Tax," which was signed by the Callans, on behalf of the corporation in January of 1968 and by a representative of the Commissioner on February 13, 1968. On the completed form, the following was entered in the space provided for the corporation's name:

CALLAN INVESTMENT CO. (A DISSOLVED CORPORATION) SIGNED BY A MAJORITY OF THE LAST SUBSISTING DIRECTORS ACTING UNDER THE AUTHORITY OF SECTION 4800 AND/OR 4801 OF THE CALIFORNIA CORPORATION CODE.

The signatures of Michael and Thomas, as officers of the corporation, were entered below this message.

As a result of the transfer of all of its assets to the Callans, the corporation was rendered insolvent and lacked the assets with which to pay the deficiencies in personal holding company tax plus interest. Accordingly no part of the deficiencies has been paid. The amount of cash plus the fair market value of the assets transferred by the corporation to Michael and Thomas, however, exceeded the amount of such deficiencies plus the interest thereon.

Michael and Thomas were "transferees" of the corporation's assets within the meaning of section 6901, I.R.C. 1954, and as such would have been liable for any deficiencies in personal holding company tax plus interest. As a result, on March 22, 1968, the corporation's board of directors (Michael, Thomas, and Michael's wife, Lorraine) held a special meeting. At the meeting it was stated that the Government had determined the corporation to be liable for personal holding company tax and that consequently it would be advisable to request the corporation's stockholders to contribute funds which would enable the corporation "to discharge or otherwise dispose of these obligations and any other obligations which it might have." The board of directors then adopted the following resolutions:

RESOLVED, that the shareholders of this Corporation be and they hereby are requested to contribute to the Corporation an aggregate amount of Twenty-one Thousand Dollars ($21,000.00), each shareholder contributing his pro rata share, to enable this Corporation to discharge its obligations.

FURTHER RESOLVED, that Michael C. Callan and Thomas J. Callan, Jr., be and they hereby are authorized and directed to establish an account in the name of this Corporation at a bank selected by them, to deposit in such account all amounts contributed by the shareholders, as and when received, and to draw checks against such account for the discharge of the obligations of this Corporation or as otherwise directed by this Board of Directors.

On March 27, 1968, the following events occurred (although not necessarily in the order in which they are mentioned) : (1) An account in the name of the corporation was opened at an office of the First Western Bank in San Francisco. (2) The Callans delivered checks payable to the corporation in the aggregate amount of $21,000. (3) The checks were deposited in the corporation's account. (4) The corporation's board of directors held a special meeting wherein they purported to declare two "deficiency dividends" pursuant to section 547, I.R.C. 1954, in the amounts of $19,918.98 and $959.82 and thus 1 cent greater than the corporation's total undistributed personal holding company income for the two periods involved herein of $20,878.79. (5) Four checks, in the aggregate amount of $20,878.80, were drawn on the corporation's newly opened account; two of the checks, in the amounts of $9,959.49 and $479.91, were payable to Michael and were endorsed by him; the two remaining checks were in the same amounts and were payable to and endorsed by Thomas.

After the four checks were debited to the corporation's account, $121.20 remained on deposit. From that amount a $1.03 service charge was deducted on April 12, 1968, leaving $120.17 in the account on that date. No evidence of subsequent changes in the corporation's account was offered at the trial herein.

On May 13, 1968, the corporation filed a completed Form 976, "Claim for Deficiency Dividends Deduction, or Credit or Refund Under Section 547 of the Internal Revenue Code." The Commissioner disallowed the claim.

Michael and his wife, Lorraine Callan, filed a joint Federal income tax return for the calendar year 1968, dated April 14, 1969. Thomas and his wife, Gladys Callan, also filed a joint return for the calendar year 1968, dated March 26, 1969. Neither return disclosed the receipt of any dividend income from the corporation. However, on January 23, 1970, after the hearing in this Court, each couple filed an amended joint income tax return for the calendar year 1968 with the district director of internal revenue at San Francisco, and each of those returns reported an increase in income of $10,439.40 to reflect receipt of the purported "deficiency dividends" from the corporation.

In his statutory notices of deficiency to Michael and Thomas, the Commissioner determined that as a result of his disallowance of the corporation's claim for a deficiency dividends deduction, the petitioners, as transferees of the corporation's assets, were jointly and severally liable for the corporation's deficiencies in income and personal holding company tax, plus interest.

Section 541, I.R.C. 1954, imposes a 70-percent tax on the "undistributed personal holding company income" (as defined in sec. 545, I.R.C.

1954) of every "personal holding company" (as defined in sec. 542, I.R.C. 1954). In general, the tax (secs. 541–547, I.R.C. 1954) is designed to prevent avoidance of the graduated individual income tax rates by the use of a corporation which is controlled by a limited number of stockholders, derives a substantial portion of its income from specified sources, and accumulates rather than distributes its earnings.[1] The extremely high rate of the personal holding company tax is designed, at least in part, to encourage corporations subject to the tax to avoid it by distributing their earnings to their stockholders— thereby exposing the earnings to the graduated individual income tax rates. See H. Rept. No. 704, 73d Cong., 2d Sess., pp. 11–12 (1934) ; S. Rept. No. 558, 73d Cong., 2d Sess., pp. 13–16 (1934) ; *O'Sullivan Rubber Co.* v. *Commissioner*, 120 F. 2d 845, 847–848 (C.A. 2) ; Lubick, "Personal Holding Companies—Yesterday, Today and Tomorrow," 42 Taxes 855, 857–859. Moreover, even after a corporation's liability for the tax has been determined, it is permitted, under certain conditions, to reduce its tax liability by distributing "deficiency dividends" to its stockholders—thereby subjecting them to individual income tax as a result of the dividends they receive, but at the same time reducing the corporation's liability for the personal holding company tax (excluding interest, penalties, and additions to tax). The reduction in the corporation's personal holding company tax liability is known as the "deficiency dividends deduction," and it is the focal point of the controversy in this case.

Section 547 [2] grants statutory authority for the deficiency dividends deduction. It provides that once a corporation has been determined to

---

[1] More specifically, Congress enacted the personal holding company tax in 1934 in an effort to reduce the importance of the defense, available under the accumulated earnings tax provisions, that the corporation's accumulation of earnings was required by the legitimate needs of the business. Moreover, the personal holding company tax was imposed at such a high rate that, where applicable, it would deter the accumulation of earnings more effectively than did the accumulated earnings tax. See H. Rept. No. 704, 73d Cong., 2d Sess., pp. 11–12 (1934) ; S. Rept. No. 558, 73d Cong., 2d Sess., pp. 13–16 (1934) ; *O'Sullivan Rubber Co.* v. *Commissioner*, 120 F. 2d 845, 847–848 (C.A. 2) ; Lubick, "Personal Holding Companies—Yesterday, Today and Tomorrow," 42 Taxes 855, 857–858 (1964).

[2] SEC. 547. DEDUCTION FOR DEFICIENCY DIVIDENDS.

(a) GENERAL RULE.—If a determination (as defined in subsection (c)) with respect to a taxpayer establishes liability for personal holding company tax imposed by section 541 (or by a corresponding provision of a prior income tax law) for any taxable year, a deduction shall be allowed to the taxpayer for the amount of deficiency dividends (as defined in subsection (d)) for the purpose of determining the personal holding company tax for such year, but not for the purpose of determining interest, additional amounts, or assessable penalties computed with respect to such personal holding company tax.

(b) RULES FOR APPLICATION OF SECTION.—

(1) ALLOWANCE OF DEDUCTION.—The deficiency dividend deduction shall be allowed as of the date the claim for the deficiency dividend deduction is filed.

(2) CREDIT OR REFUND.—If the allowance of a deficiency dividend deduction results in an overpayment of personal holding company tax for any taxable year, credit or refund with respect to such overpayment shall be made as if on the date of the determination 2 years remained before the expiration of the period of limitation on the filing of claim

be liable for personal holding company tax, the corporation may reduce its liability for the tax by making a taxable distribution to its shareholders within 90 days of the determination and deducting the amount of that distribution from its personal holding company income as a deficiency dividends deduction.

The general rule for allowance of the deficiency dividends deduction is set forth in section 547(a), which refers to section 547(d) for the definition of "deficiency dividends." By its terms, the definition depends upon the amount of the dividends otherwise includable in the "deduction for dividends paid" authorized by section 561.[3] Section 561(b)(1) declares that in determining the amount of the deduction

for refund for the taxable year to which the overpayment relates. No interest shall be allowed on a credit or refund arising from the application of this section.

(c) DETERMINATION.—For purposes of this section, the term "determination" means—

(1) a decision by the Tax Court or a judgment, decree, or other order by any court of competent jurisdiction, which has become final;

(2) a closing agreement made under section 7121; or

(3) under regulations prescribed by the Secretary or his delegate, an agreement signed by the Secretary or his delegate and by, or on behalf of, the taxpayer relating to the liability of such taxpayer for personal holding company tax.

(d) DEFICIENCY DIVIDENDS.—

(1) DEFINITION.—For purposes of this section, the term "deficiency dividends" means the amount of the dividends paid by the corporation on or after the date of the determination and before filing claim under subsection (e), which would have been includible in the computation of the deduction for dividends paid under section 561 for the taxable year with respect to which the liability for personal holding company tax exists, if distributed during such taxable year. No dividends shall be considered as deficiency dividends for purposes of subsection (a) unless distributed within 90 days after the determination.

(2) EFFECT ON DIVIDENDS PAID DEDUCTION.—

(A) FOR TAXABLE YEAR IN WHICH PAID.—Deficiency dividends paid in any taxable year (to the extent of the portion thereof taken into account under subsection (a) in determining personal holding company tax) shall not be included in the amount of dividends paid for such year for purposes of computing the dividends paid deduction for such year and succeeding years.

(B) FOR PRIOR TAXABLE YEAR.—Deficiency dividends paid in any taxable year (to the extent of the portion thereof taken into account under subsection (a) in determining personal holding company tax) shall not be allowed for purposes of section 563(b) in the computation of the dividends paid deduction for the taxable year preceding the taxable year in which paid.

[3] SEC. 561. DEFINITION OF DEDUCTION FOR DIVIDENDS PAID.

(a) GENERAL RULE.—The deduction for dividends shall be the sum of—

(1) the dividends paid during the taxable year,

(2) the consent dividends for the taxable year (determined under section 565), and

(3) in the case of a personal holding company, the dividend carryover described in section 564.

(b) SPECIAL RULES APPLICABLE.—

(1) In determining the deduction for dividends paid, the rules provided in section 562 (relating to rules applicable in determining dividends eligible for dividends paid deduction) and section 563 (relating to dividends paid after the close of the taxable year) shall be applicable.

(2) If a corporation received antitrust stock (as defined in section 301(f)) in a distribution to which section 301 applied and such corporation distributes such stock (or other property the basis of which is determined by reference to the basis of such stock) to its shareholders, proper adjustment shall be made, under regulations prescribed by the Secretary or his delegate, to the amount of the deduction provided for in subsection (a).

for dividends paid, the rules provided in sections 562 [4] and 563 [5] apply. Section 562(a), in turn, provides that for the purposes of the personal holding company tax, the term "dividend," except as otherwise provided, includes only dividends described in section 316, I.R.C. 1954.[6]

---

[4] SEC. 562. RULES APPLICABLE IN DETERMINING DIVIDENDS ELIGIBLE FOR DIVIDENDS PAID DEDUCTION.

(a) GENERAL RULE.—For purposes of this part, the term "dividend" shall, except as otherwise provided in this section, include only dividends described in section 316 (relating to definition of dividends for purposes of corporate distributions).

(b) DISTRIBUTIONS IN LIQUIDATION.—

(1) Except in the case of a personal holding company described in section 542 or a foreign personal holding company described in section 552—

(A) in the case of amounts distributed in liquidation, the part of such distribution which is properly chargeable to earnings and profits accumulated after February 28, 1913, shall be treated as a dividend for purposes of computing the dividends paid deduction, and

(B) in the case of a complete liquidation occurring within 24 months after the adoption of a plan of liquidation, any distribution within such period pursuant to such plan shall, to the extent of the earnings and profits (computed without regard to capital losses) of the corporation for the taxable year in which such distribution is made, be treated as a dividend for purposes of computing the dividends paid deduction.

(2) In the case of a complete liquidation of a personal holding company, occurring within 24 months after the adoption of a plan of liquidation, the amount of any distribution within such period pursuant to such plan shall be treated as a dividend for purposes of computing the dividends paid deduction, to the extent that such amount is distributed to corporate distributees and represents such corporate distributees' allocable share of the undistributed personal holding company income for the taxable year of such distribution computed without regard to this paragraph and without regard to subparagraph (B) of section 316(b)(2).

[5] SEC. 563. RULES RELATING TO DIVIDENDS PAID AFTER CLOSE OF TAXABLE YEAR.

(a) ACCUMULATED EARNINGS TAX.—In the determination of the dividends paid deduction for purposes of the accumulated earnings tax imposed by section 531, a dividend paid after the close of any taxable year and on or before the 15th day of the third month following the close of such taxable year shall be considered as paid during such taxable year.

(b) PERSONAL HOLDING COMPANY TAX.—In the determination of the dividends paid deduction for purposes of the personal holding company tax imposed by section 541, a dividend paid after the close of any taxable year and on or before the 15th day of the third month following the close of such taxable year shall, to the extent the taxpayer elects in its return for the taxable year, be considered as paid during such taxable year. The amount allowed as a dividend by reason of the application of this subsection with respect to any taxable year shall not exceed either—

(1) The undistributed personal holding company income of the corporation for the taxable year, computed without regard to this subsection, or

(2) 10 percent of the sum of the dividends paid during the taxable year, computed without regard to this subsection.

[6] SEC. 316. DIVIDEND DEFINED.

(a) GENERAL RULE.—For purposes of this subtitle, the term "dividend" means any distribution of property made by a corporation to its shareholders—

(1) out of its earnings and profits accumulated after February 28, 1913, or

(2) out of its earnings and profits of the taxable year (computed as of the close of the taxable year without diminution by reason of any distributions made during the taxable year), without regard to the amount of the earnings and profits at the time the distribution was made.

Except as otherwise provided in this subtitle, every distribution is made out of earnings and profits to the extent thereof, and from the most recently accumulated earnings and profits. To the extent that any distribution is, under any provision of this subchapter, treated as a distribution of property to which section 301 applies, such distribution shall be treated as a distribution of property for purposes of this subsection.

Section 316(b)(2) relates to distributions by personal holding companies, and the controversy between the parties herein concerns its interpretation. Section 316(b)(2) provides as follows:

SEC. 316. DIVIDEND DEFINED.

(b) SPECIAL RULES.—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) DISTRIBUTIONS BY PERSONAL HOLDING COMPANIES.—

(A) In the case of a corporation which—

(i) under the law applicable to the taxable year in which the distribution is made, is a personal holding company (as defined in section 542), or

(ii) for the taxable year in respect of which the distribution is made under section 563(b) (relating to dividends paid after the close of the taxable year), or section 547 (relating to deficiency dividends), or the corresponding provisions of prior law, is a personal holding company under the law applicable to such taxable year,

the term "dividend" also means any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income (determined under section 545 without regard to distributions under this paragraph) for such year.

(B) For purposes of subparagraph (A), the term "distribution of property" includes a distribution in complete liquidation occurring within 24 months after the adoption of a plan of liquidation, but—

(i) only to the extent of the amounts distributed to distributees other than corporate shareholders, and

(ii) only to the extent that the corporation designates such amounts as a dividend distribution and duly notifies such distributees of such designation, under regulations prescribed by the Secretary or his delegate, but

(iii) not in excess of the sum of such distributees' allocable share of the undistributed personal holding company income for such year, computed without regard to this subparagraph or section 562(b).

These provisions expand the definition of "dividend" to include certain "distributions of property" made by personal holding companies. Distributions qualifying as dividends under section 316(b)(2) are, by virtue of section 562, includable in the deduction for dividends paid defined by section 561, and are therefore also taken into account in computing the amount of the deficiency dividends deduction under section 547.

The only question presented for decision is whether the corporation's "distributions" to the Callans on March 27, 1968, may be deducted by it as deficiency dividends under section 547. There is no dispute relating to petitioners' liability as transferees of the corporation's assets; the parties have stipulated that petitioners are liable for any deficiency in personal holding company tax found by this Court, together with statutory interest.[7] The controversy turns ultimately on whether the

---

[7] Even if we hold the claimed deduction allowable, petitioners will remain jointly and severally liable for statutory interest on the original deficiency, since sec. 547(a) explicitly provides that the deficiency dividends deduction shall not be allowed for the purpose of determining interest on the corporation's personal holding company tax liability.

corporation's 1968 "distributions" are treated as dividends by section 316(b)(2). Petitioners concede that the "distributions" do not qualify as "distributions of property" under subparagraph (B) of section 316(b)(2) and hence do not qualify as dividends under subparagraph (A) of that section by virtue of subparagraph (B).[8] However, they urge that the "distributions" do qualify as dividends directly under the more general provisions of subparagraph (A) and that therefore they may be taken into account in computing the deficiency dividends deduction under section 547.

The Commissioner, on the other hand, contends that subparagraph (B) of section 316(b)(2) is the only provision in that section applicable to the so-called distributions in question and that the failure of such distributions to qualify under it precludes allowance of the claimed deduction. In the alternative, even if subparagraph (A) is applicable, the Commissioner urges that as of March 27, 1968, the corporation no longer served a nontax business purpose, that as of March 27, the corporation in fact had no undistributed personal holding company income to distribute, and that the payments in question were simply a return of the Callans' own funds and not a "dividend" within the meaning of section 316(b)(2)(A). We consider these points in inverse order.

1. We think it evident that the so-called "distributions" made on March 27, 1968, were not genuine distributions at all. As of March 27, 1968, the corporation had not held assets or engaged in any business activity whatever for over 3 years. It thus had no assets of any kind, and certainly no earnings and profits, to distribute. The establishment of a bank account in the corporation's name, the deposit of the Callans' checks in that account, and the redistribution of nearly all of the very same funds to the Callans on the same day, was simply an attempt by the Callans to undo what they had done in 1965 and to recast the liquidating distributions made then as deficiency dividends in 1968. The Callans' funds were merely sent on a "planned excursion," cf. *Weyl-Zuckerman & Co.*, 23 T.C. 841, 849, affirmed 232 F. 2d 214 (C.A. 9), or a "round-trip," cf. *David L. Lieb*, 40 T.C. 161, 164, to the corporation and back for the purpose of qualifying the distributions for the desired deduction. Cf. *Nicholson* v. *Commissioner*, 90 F. 2d 978 (C.A. 8), affirming 32 B.T.A. 977; *Shoenberg* v. *Commissioner*, 77 F. 2d 446 (C.A. 8), affirming 30 B.T.A. 659, certiorari denied 296 U.S. 586; *William H. Perry*, 54 T.C. 1293 (1970); *Frederick R. Horne*, 5 T.C. 250; *Pierre S. Du Pont*, 37 B.T.A. 1198, affirmed 118 F. 2d 544 (C.A. 3), certiorari denied 314 U.S. 623; *Joseph W. Powell*,

---

[8] The "distributions" here in issue were made nearly 4 years after the plan to liquidate the corporation was adopted. They clearly do not qualify under subpar. (B), since subpar. (B) applies only to "a distribution in complete liquidation occurring *within 24 months* after the adoption of a plan of liquidation * * *." (Emphasis supplied).

34 B.T.A. 655, affirmed 94 F. 2d 483 (C.A. 1); *Hamlen* v. *United States*, 31 F. Supp. 309 (D. Mass.). The dormant status of the corporation remained substantially unchanged. We conclude that the "distributions" of March 27, 1968, were not distributions at all for purposes of section 316 (b) (2) and that the claimed deficiency dividends deduction may not be allowed.

2. In any event, even if the so-called "distributions" are deemed genuine for purposes of section 316 (b) (2), we think that they never-theless fail to qualify for the deficiency dividends deduction. The 1968 distributions, like the 1965 distributions, were liquidating in nature. After the 1965 distributions were made, the corporation held no assets and engaged in no business of any kind. The 1968 distributions thus did not alter the corporation's dormant status.

Petitioners urge that section 5400 of the California Corporations Code[9] authorized both the continued existence of the corporation in 1968 and the actions taken in executing the determination of personal holding company tax liability and in engaging in the transactions of March 27, 1968. We do not suggest otherwise. However, we do note that section 5400 expressly withholds authority for the continued existence of a corporation "for the purpose of continuing business except so far as necessary for the winding up thereof." This provision thus lends further support to our conclusion that the 1968 distributions were liquidating in nature.

Once the 1968 distributions are characterized as liquidating distributions, the question before us becomes whether a liquidating distribution may qualify as a "dividend" directly under subparagraph (A) of section 316 (b) (2). The legislative history of sections 316 (b) (2) and 562 (b) makes it clear that it may not, and that a liquidating distribution must qualify under subparagraph (B) in order to be considered a dividend for purposes of the deficiency dividends deduction.

Prior to 1964, section 562 (b) treated a liquidating distribution (to the extent of accumulated earnings and profits) made by a personal holding company as a dividend for purposes of computing the dividends paid deduction under section 561:

SEC. 562. RULES APPLICABLE IN DETERMINING DIVIDENDS ELIGI-BLE FOR DIVIDENDS PAID DEDUCTION.

(b) DISTRIBUTIONS IN LIQUIDATION.—In the case of amounts distributed in liquidation, the part of such distribution which is properly chargeable to earnings and profits accumulated after February 28, 1913, shall be treated as a dividend

---

[9] Cal. Corp. Code sec. 5400:

A corporation which is dissolved by the expiration of its term of existence, by forfeiture of existence by order of court, or otherwise, nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it, and enabling it to collect and discharge obligations, dispose of and convey its property, and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof.

for purposes of computing the dividends paid deduction. In the case of a complete liquidation occurring within 24 months after the adoption of a plan of liquidation any distribution within such period pursuant to such plan shall, to the extent of the earnings and profits (computed without regard to capital losses) of the corporation for the taxable year in which such distribution is made, be treated as a dividend for purposes of computing the dividends paid deduction.

A liquidating distribution was thus deducted (to the extent of accumulated earnings and profits) when computing the liquidating corporation's undistributed personal holding income and consequently reduced its personal holding company tax liability.

Moreover, prior to 1964, section 316(b)(2) provided as follows:

SEC. 316. DIVIDEND DEFINED.

(b) SPECIAL RULES.—

\*         \*         \*         \*         \*         \*         \*

(2) DISTRIBUTIONS BY PERSONAL HOLDING COMPANIES.—In the case of a corporation which—

(A) under the law applicable to the taxable year in which the distribution is made, is a personal holding company (as defined in section 542), or

(B) for the taxable year in respect of which the distribution is made under section 563(b) (relating to dividends paid after the close of the taxable year), or section 547 (relating to deficiency dividends), or the corresponding provisions of prior law, is a personal holding company under the law applicable to such taxable year,

the term "dividend" also means any distribution of property (whether or not a dividend as defined in subsection (a)) made by the corporation to its shareholders, to the extent of its undistributed personal holding company income (determined under section 545 without regard to distributions under this paragraph) for such year. [Emphasis supplied.]

When that provision was originally enacted in 1942, as an amendment to section 115(a), I.R.C. 1939, both the House and Senate reports declared (H. Rept. No. 2333, 77th Cong., 2d Sess., pp. 136–137 (1942); S. Rept. No. 1631, 77th Cong., 2d Sess., pp. 176–177 (1942)):

The amendments made by this section provide that any distribution to shareholders (*not in complete or partial liquidation*) made on or after the date of enactment of this act by a corporation which, for the taxable year in which such a distribution is made or for the taxable year in respect of which it is made \* \* \*, was under the applicable law a personal holding company, will now constitute a taxable dividend even if not paid out of accumulated or current earnings or profits. [Emphasis supplied.]

That the amended section 115(a) did not govern liquidating distributions was also emphasized in 1956 by the Third Circuit in *St. Louis Co.* v. *United States*, 237 F. 2d 151, 154–155 (C.A. 3), certiorari denied 352 U.S. 1001:

That Section 115(a) is inapplicable to this distribution is made clear by the legislative history of the "Distributions by Corporations" provisions of Sec. 115. The problem of distinguishing the ordinary dividend distribution from a distribution in liquidation was one inherent in the wording of the early Revenue Acts. See James Dobson, 1925, 1 B.T.A. 1082. The structure of the later Code provisions was established in the Revenue Act of 1924[4] where the definition of "dividend" was distinguished from the treatment of the distribution in liquidation. The provisions of Sec. 115 here in issue are the result of amendments by the various Revenue Acts which emphasized the difference in treatment to be

accorded the two types of distribution, and it is clear that the distinguishing factor in these corporate distribution provisions is the difference between a distribution made by a going corporation and one made by a corporation in liquidation. Hellmich v. Hellman, 1928, 276 U.S. 233, 48 S.Ct. 244, 72 L.Ed. 544. Thus under Sec. 115(c) a distribution in complete liquidation is treated as a *sale or exchange* with a resultant capital gain or loss in- the hands of the distributees despite the existence of a surplus out of which dividends might have been declared. On the other hand, dividend distributions under Sec. 115(a) are treated and taxed as *ordinary income* in the hands of the stockholder distributees.

　　*　　　*　　　*　　　*　　　*　　　*　　　*

Taxpayer urges that Sec. 27(g) [the predecessor of the original 1954 Code section 562(b)] is of general application since it does not deal specifically with personal holding companies whereas Sec. 115(a) does deal directly with personal holding companies and specifically states that a different and broader definition of "dividend" is to be used in the case of a personal holding company than in the case of an ordinary business corporation. We need only refer to the dominating distinction discussed above. In broadening the definition of dividend to include "any distribution" by a personal holding company to its stockholders,[7] the legislative committees were explicit that the distributions by a personal holding company to stockholders did not encompass distributions in liquidation. H.R. Rep. No. 2333, 77th Cong., 2d Sess. 130–131 (1942–2 Cum. Bull. 372, 473) ;[8] S. Rep. No. 1631, 77th Cong., 2d Sess. 177 (1942–2 Cum. Bull. 504, 634).

[Footnotes omitted.]

Accord, *Brooklyn Nat'l Corp.*, 5 T.C. 892, 894–895, affirmed 157 F. 2d 450 (C.A. 2), certiorari denied 329 U.S. 733. See *Hellmich* v. *Hellman*, 276 U.S. 233, 236–237 (holding section 201(a) of the Revenue Act of 1918 inapplicable to a liquidating distribution) ; *Foster* v. *United States*, 303 U.S. 118, 120–121 (holding that a distribution made in partial liquidation was not governed by section 115(a) of the Revenue Act of 1928) ; *Shellabarger Grain Products Co.*, 2 T.C. 75, 82–83, affirmed 146 F. 2d 177 (C.A. 7) (holding that a distribution made in partial liquidation was not governed by section 115(a) of the Revenue Act of 1936). See also *Atlantic City Elec. Co.* v. *United States*, 161 F. Supp. 811 (Ct. Cl.), certiorari denied 358 U.S. 834; *Central & South West Corporation* v. *Brown*, 249 F. Supp. 787, 794–795 (D. Del.).

Thus, since, prior to 1964, section 316(b)(2) did not govern liquidating distributions, stockholders receiving such a distribution from a personal holding company were taxed on it at favorable capital gain rates. Consequently, in the year of liquidation, a personal holding company could escape liability for the personal holding company tax by virtue of a liquidating distribution, while its stockholders avoided taxation on the distribution at ordinary-income rates.

Such result was at odds with the original purpose of the personal holding company provisions, which was to encourage distribution of accumulated income into the hands of individual stockholders where it would be subjected to individual income tax rates, and the 1964

legislation was designed to remedy the problem. See H. Rept. No. 749, 88th Cong., 1st Sess., pp. 82, A104 (1963); S. Rept. No. 830, 88th Cong., 2d Sess., p. 112 (1964). In its report on the 1964 Code amendments, the House Ways and Means Committee again specifically noted (H. Rept. No. 749, 88th Cong., 1st Sess., p. A104 (1963)):

This special definition of a dividend in section 316(b)(2) does not apply to distributions in partial or complete liquidation of a personal holding company.

Under the 1964 legislation, the introductory clause of current Code section 562(b)(1) was added (sec. 225(f)(3), Revenue Act of 1964, 78 Stat. 88) in order to exclude personal holding companies from the coverage of the provisions which had previously treated a liquidating distribution by a personal holding company as a dividend for purposes of the dividends paid deduction.[10]

However, at the same time, section 316(b)(2)(B) was also added to the Code in order to permit certain liquidating distributions made by personal holding companies to noncorporate stockholders to qualify for the dividends paid deduction, but only under conditions designed to ensure that the recipient stockholders would be taxed on such distributions at ordinary-income rates. Sec. 225(f)(1), Revenue Act of 1964, 78 Stat. 87–88. The House and Senate reports summarized the effect of these provisions as follows (H. Rept. No. 749, 88th Cong., 1st Sess., p. 82 (1963); S. Rept. No. 830, 88th Cong., 2d Sess., p. 112 (1964)):

it is provided in section 316(b) that in the case of a complete liquidation of a personal holding company within a 24-month period after the adoption of the plan of liquidation, that the term "dividend" is to include any amounts distributed in this liquidation to other than corporate shareholders to the extent of its undistributed income (before any deduction for this amount) only if the corporation involved designates amounts as dividends (and so notifies the distributee). If the corporation does so designate the distributions as dividends the individuals receiving a liquidating distribution from the personal holding company must report the amount so distributed as a dividend in the year of receipt. * * *

The pre-1964 version of section 316(b)(2), however, was preserved unchanged in section 316(b)(2)(A).

Thus, the purpose of the 1964 amendments to sections 316(b)(2) and 562(b)(1) was to prevent a result caused by the fact that a liquidating distribution by a personal holding company was not covered by pre-1964 section 316(b)(2) and consequently was not taxed in the hands of recipient stockholders at ordinary-income rates. Subparagraph (B) of section 316(b)(2) was therefore added in order to

---

[10] Sec. 562(b)(2) was also added to the Code, permitting liquidating distributions made by personal holding companies to corporate distributees to be treated as dividends, under certain conditions, for purposes of the dividends paid deduction. Sec. 225(f)(3), Revenue Act of 1964, 78 Stat. 88.

ensure that when such a distribution was treated as a dividend for purposes of the dividends paid deduction, the distribution would be taxed to the stockholders at ordinary rates. Section 316 (b) (2) (A) preserved the language of the pre-1964 section, and, like its pre-1964 forerunner, it remained completely inapplicable to liquidating distributions by personal holding companies. Regulations section 1.316–1 (b) (1), amended in 1968 to reflect the 1964 Code amendments, makes this absolutely clear:

This subparagraph does not apply to distributions in partial or complete liquidation of a personal holding company. In the case of certain complete liquidations of a personal holding company see subparagraph (2) of this paragraph [relating to subparagraph (B) of Code sec. 316 (b) (2)].

We conclude that the distributions in issue are not governed directly by section 316 (b) (2) (A). See Libin, "Personal Holding Companies and the Revenue Act of 1964," 63 Mich. L. Rev. 421, 443 & fn. 74 (1965).

While the Code does permit a personal holding company to designate a liquidating distribution as a "dividend" for the purposes of section 316, the procedure outlined in subparagraph (B) of section 316 is the only authorized method for such designation. Subparagraph (B) was added to the Code precisely because liquidating distributions by personal holding companies had not been governed by the forerunner of subparagraph (A) and because compliance with the requirements of subparagraph (B) would ensure that, when properly designated as a dividend, such a distribution would be taxed to the recipients at ordinary rates. Allowing a liquidating distribution to qualify as a dividend directly under subparagraph (A) would thus defeat the purpose of subparagraph (B).[11] Compare sec. 1.316–1(b) (5), Income Tax Regs.[12]

Petitioners urge that if a liquidating distribution must qualify under subparagraph (B), or not at all, an unfair distinction is made between a distribution by a liquidating personal holding company, which must qualify under subparagraph (B), and a distribution by a personal holding company continuing in business, which may qualify directly under subparagraph (A) and thereby avoid the requirements of subparagraph (B). As explained above, however, subparagraph

[11] We note that petitioners' original income tax returns for the calendar year 1968 did not disclose receipt of dividend income as a result of the distributions here in issue. Subpar. (B) is designed to ensure that distributions satisfying its requirements are reported by the recipients as ordinary income, and petitioners' initial failure to report the distributions here suggests the opportunity for abuse if the requirements set forth in subpar. (B) need not be followed.

[12] These *regulations provide that a distributing corporation may satisfy the "designation"* requirement of sec. 316(b)(2)(B)(ii) by claiming a deduction on its return and reporting the dividends to the Internal Revenue Service on Form 1099. The regulations thus help make effective the underlying purposes of subpar. (B).

(B) was designed to make just such a distinction, in order to ensure that a liquidating distribution which was treated as a dividend for purposes of the dividends paid deduction would be taxed to the recipients at ordinary rates.

We recognize that our reading of the statute may work a harsh result upon the petitioners. The corporation was not determined to be liable for the personal holding company tax until nearly 4 years after the plan of liquidation was adopted, and by that time it was precluded from making a distribution which qualified under subparagraph (B), since such distribution must be made within 24 months after the adoption of a plan of liquidation. However, we think that the statute leaves us with no other choice, and the claimed deduction must be disallowed. As was stated in *St. Louis Co.* v. *United States*, 237 F. 2d 151, 157 (C.A. 3), certiorari denied 352 U.S. 1001:

It is recognized that Congress imposed the prohibitive surtax on personal holding companies to destroy the tax advantages accruing to such companies, and to drive them out of business. Since complete liquidation accomplished the desired result in this case, taxpayer urges that imposition of the tax would be contrary to the intent of Congress and destructive of the purpose of the personal holding company provisions. The District Court points out the inequity of imposing the surtax on taxpayer in this situation in 134 F. Supp. 411, at page 415:

"The overriding intent of Congress, it would seem, was, that insofar as personal holding companies are concerned, to compel such companies to distribute the funds on hand and to prevent their accumulation or to compel substantial surtaxes on such accumulation. There seems no discernible intent to discriminate against a company unsuccessful in past years as against one which had had some measure of success, when in both cases the overriding purpose of Congress, viz., the distribution of all funds, is accomplished."

See also Pembroke Realty & Securities Corp v. Commissioner, supra, 122 F. 2d at page 254, and Piper v. United States, supra, 50 F. Supp. at page 365.

However, arguments based upon inequity are beyond judicial cognizance where the statute does not remedy the inequity, nor can we extend the meaning of the statute to embrace matters for which no provision has been made. The Supreme Court has affirmed this principle in United States v. Olympic Radio & Television, Inc., 1955, 349 U.S. 232, 236, 75 S.Ct. 733, 736, 99 L.Ed 1024, where it said:

"This taxpayer argues the inequity of the results which would follow from our construction of the Code. But as we have said before, 'general equitable considerations' do not control the question of what deductions are permissible. Deputy v. du Pont, supra, [308 U.S.] at page 493 [60 S.Ct. 366]. It may be that Congress granted less than some thought or less than was originally intended. We can only take the Code as we find it and give it as great an internal symmetry and consistency as its words permit."

See also *Brooklyn Nat'l Corp.*, 5 T.C. 892, 894, affirmed 157 F. 2d 450 (C.A. 2), certiorari denied 329 U.S. 733, and cases cited therein.

*Decisions will be entered for the respondent.*