PRAXITELES INC., SHELDON M. SISSON, A PERSON OTHER THAN THE TAX MATTERS PERSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Praxiteles Inc. v. Commissioner
Docket No. 16653-91
United States Tax Court
T.C. Memo 1993-622; 1993 Tax Ct. Memo LEXIS 641; 66 T.C.M. (CCH) 1778; December 27, 1993, Filed *641 Decision will be entered for respondent. Sheldon M. Sisson, pro se. For respondent: Victor A. Ramirez. BEGHE
BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION BEGHE, Judge: By notice of final S corporation administrative adjustment (FSAA), respondent determined a $ 2,179,217 adjustment to the S corporation return of income of Praxiteles, Inc., for the taxable year 1985. This adjustment resulted from the disallowance of deductions for interest, maintenance and insurance, option fees, professional fees, and a filing fee. Praxiteles, Inc. (Praxiteles), is an S corporation subject to the unified audit and litigation procedures for subchapter S items under sections 6221-6245 originally enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 324, 648. [1] When the petition in this case was filed, Praxiteles' principal place of business was Shandon, California. *642 The issues for decision are (1) whether the FSAA was barred by expiration of the statutory period of limitations and (2) whether Praxiteles was entitled to deduct $ 2,179,217 of interest and other expenses on its 1985 return. For the reasons discussed below, we hold that the FSAA was not time barred and that Praxiteles was not entitled to any of the deductions claimed on its 1985 return. FINDINGS OF FACT Some of the facts have been stipulated and they are so found. Deductions
Praxiteles, with four other California corporations (Picabia, Inc.; Persian, Inc.; Manet, Inc.; and LeBrun, Inc.), was formed under California law on June 1, 1984, and was promoted and syndicated as a tax shelter by Gerald L. Schulman. [2] Praxiteles elected under subchapter S of the Internal Revenue Code and otherwise qualified as an S corporation. Praxiteles' income tax accounting period was the calendar year, and it elected to use the cash method of accounting.
*643 Schulman was the largest shareholder of Praxiteles, with a 43.432-percent stock interest. Dr. Charles V. Bergquist was president of Praxiteles and the four other corporations mentioned above. He was also designated as tax matters person (TMP) of Praxiteles and had a .67-percent stock interest in the corporation. Petitioner Sheldon Sisson was a 4.79-percent shareholder in Praxiteles and served as its legal counsel. In January 1985, Praxiteles circulated an offering memorandum soliciting investors to purchase 31 units of 100 shares in Praxiteles to be sold for $ 100,000 per unit. The offering memorandum stated that 70 percent of each shareholder's capital contribution would be deductible by the corporation, and passed through to its shareholders, as of December 31, 1985, and that the balance would be deductible as of January 1, 1986. Praxiteles raised the entire $ 3.1 million in capital called for by the offering memorandum. According to the offering memorandum, on January 14, 1985, Praxiteles had entered into an option agreement with Schulman to purchase from him one or more of four pieces of improved real property for the predetermined amount of $ 10,320,000 per building in *644 exchange for an option fee to be due December 31, 1985. Schulman's profit on the sale of any one property transaction was predetermined to be $ 1,850,000. Schulman also had entered into similar option agreements with the four other California corporations mentioned above. According to the offering memorandum, on March 1, 1985, Praxiteles exercised its option to acquire property in Denton, Texas, and the other four corporations made elections to acquire properties pursuant to their respective option agreements. However, because Schulman was unable to deliver the properties selected, Praxiteles and the other four corporations agreed with Schulman to acquire an interest in one property in San Antonio, Texas, to be leased to the Texas Department of Human Resources for 8 years beginning January 1, 1986. On December 30, 1985, Praxiteles and the other four corporations executed a merger agreement, stated therein to be effective December 27, 1985, on such terms that Praxiteles would be the surviving corporation. However, there is no evidence in the record that the merger agreement was filed or became effective during the calendar year 1985. Under the terms of a "Re-executed Agreement *645 for the Purchase of Real Property" (which was never executed), stated therein to be effective March 1, 1985, Schulman was to sell the San Antonio property to Praxiteles for $ 10,320,000 pursuant to a 30-year nonrecourse note (which was never executed) in that principal amount with interest at 15 percent per annum for the first 22 months, 8.875 percent for the next 36 months, and thereafter at a rate determined under an amortization schedule. The building was to be turned over to Praxiteles and the first interest payment made on December 31, 1985. The offering memorandum also stated that Praxiteles had entered into a 5-year maintenance and insurance agreement with Postal Management Services Co. (PMSC), a California company wholly owned by Schulman. PMSC also purportedly agreed to prepare Praxiteles' returns of income and represent it in any State or Federal tax controversies that might arise as a result of the property transaction. According to a "Re-executed Maintenance and Insurance Agreement" (which was never executed), Praxiteles was to pay PMSC a fee of $ 114,212 on December 31, 1985. On December 30, 1985, one Praxiteles shareholder sold his entire stock interest. Praxiteles *646 and its shareholders thereupon elected, under section 1377(a)(2) and the applicable regulation, to treat 1985 as 2 short taxable years, one ending December 30, 1985, and the other a 1-day taxable year beginning and ending December 31, 1985. Their purpose in so doing was to cause the interest, option, and maintenance and insurance payments due December 31, 1985, to be paid that day, so that Praxiteles would have zero income and deductions for the taxable year ending December 30, 1985, and zero income and a large net operating loss that would flow through to its shareholders for the 1-day short taxable year ending December 31, 1985. Praxiteles also planned to liquidate on January 2, 1986, the day after it would assertedly have been entitled to a deduction for the remaining 30 percent of the shareholders' capital contributions, and distribute its assets to a California limited partnership, Praxiteles, Ltd. Praxiteles dissolved under the California corporation law on September 4, 1987. On its timely filed U.S. Income Tax Return for an S Corporation (Form 1120S) for the taxable year ending December 31, 1985, Praxiteles reported that it had zero income and the following expense deductions: *647 Expense
Amount Interest
$ 1,290,000
Maintenance & Insurance
114,212
Professional Fees
1,000
Filing Fee
5
Option Fees
774,000
Total
$ 2,179,217
Praxiteles thus reported a total net operating loss of $ 2,179,217 for the taxable year ending December 31, 1985, and attached Schedules K-1 indicating the shareholders' distributive share of that loss. Despite the recitations in the offering memorandum and the various exhibits attached thereto about Praxiteles' business plan, Praxiteles never acquired the real property that it was supposed to acquire from Schulman on December 31, 1985. There is also no evidence that Praxiteles ever paid any of the expenses that petitioner alleges it paid. Statute of Limitations
The statutory period of limitations on assessment of income taxes attributable to S corporation items of Praxiteles would have expired in the ordinary course on April 17, 1989, [3] 3 years after Praxiteles filed its 1985 return. On January 2, 1989, at the request of respondent's revenue agent, but contrary to the advice of petitioner, Dr. Bergquist signed an agreement to extend the period of limitations on assessment of S corporation items (Form 872-S) of *648 Praxiteles for the taxable year 1985 until June 30, 1990. On April 6, 1990, Dr. Bergquist executed another Form 872-S agreeing to extend the period of limitations until June 30, 1991. [4] Dr. Bergquist signed the forms on the signature line for the TMP. When Dr. Bergquist signed the agreements to extend the period of limitations, he was suffering from Parkinson's disease. The agreements were countersigned by respondent's designated agent before expiration of the respective periods of limitation. On March 18, 1991, respondent mailed Dr. Bergquist, as TMP of Praxiteles, an FSAA disallowing all deductions claimed on Praxiteles' 1985 return and determining a $ 2,179,217 adjustment. If the agreements to extend the period of limitations were valid, the FSAA was timely mailed. *649 OPINION The primary issue in this case, and the only one on which evidence was presented at trial, is whether the FSAA was barred by operation of the statute of limitations. After holding that it was not so barred, we briefly discuss petitioner's claim that Praxiteles was entitled to interest and other deductions in the amount of $ 2,179,217 for 1985. Inasmuch as petitioner has not carried his burden of proof with respect to the deductions, we sustain respondent's determination in its entirety. Statute of Limitations
Under section 6229(a), as made applicable to S corporations by section 6244, the period of limitations on assessment of income taxes attributable to S corporation items (and affected items) is 3 years from the later of the date the S corporation return was filed or the last date for filing such a return (without regard to extensions). Sec. 6244; Bugaboo Timber Co. v. Commissioner, 101 T.C.     (1993) (slip op. at 14-15). Under section 6229(b)(1)(B), the 3-year period of limitations may be extended with respect to all shareholders by agreement entered into by the Secretary and the TMP (or any other person authorized by the corporation in writing to *650 enter into such an agreement) before the expiration of the 3-year period. Secs. 6229(b)(1)(B), 6244. The expiration of the statutory period of limitations is an affirmative defense, and the party raising the defense must specifically plead and carry the burden of proving its applicability. Rules 39; 142(a). The defense is deemed to be waived unless pleaded. Niedringhaus v. Commissioner, 99 T.C. 202, 214 (1992); C-99 Ltd. v. Commissioner, T.C. Memo. 1993-574. In this case, the defense was properly raised. In order to prevail on the defense, petitioner must make a prima facie case respecting the filing of Praxiteles' 1985 S corporation return of income, the expiration of the period of limitations, and the mailing of the FSAA after the expiration of the period of limitations. Amesbury Apartments, Ltd. v. Commissioner, 95 T.C. 227, 240-241 (1990). If petitioner makes this showing, respondent has the burden of going forward with evidence that there is an applicable exception to the expiration of the period of limitations. Adler v. Commissioner, 85 T.C. 535, 540 (1985); *651 General Information Assoc. Partnership v. Commissioner, T.C. Memo. 1992-583. Respondent can discharge this burden by showing that the FSAA was mailed prior to expiration of the limitations period pursuant to an agreement to extend the period of limitations that is "valid on its face". Adler v. Commissioner, supra; Concrete Engineering Co. v. Commissioner, 19 B.T.A. 212 (1930), affd. 58 F.2d 566 (8th Cir. 1932); C & M Amusements, Inc. v. Commissioner, T.C. Memo. 1993-527; General Information Assoc. Partnership v. Commissioner, supra.
An S corporation extension agreement is valid on its face if it identifies the S corporation, bears the signature of the TMP or authorized representative, identifies the taxable year, and is dated prior to expiration of the existing period of limitations. See C & M Amusements, Inc. v. Commissioner, supra.Once the extension agreement is shown to be valid on its face, the burden of going forward shifts back to petitioner to show *652 that the extension is invalid or otherwise not applicable. The burden of proof, i.e., the burden of ultimate persuasion, never shifts from the party pleading the limitations defense. Adler v. Commissioner, supra at 540. Petitioner has made a prima facie case that the FSAA was time barred. However, Dr. Bergquist, Praxiteles' designated TMP, timely signed the agreements to extend the period of limitations on assessment of items attributable to Praxiteles for 1985. We therefore find the extension agreements to be facially valid, and the burden is on petitioner to show that they are invalid. Petitioner argues that the agreements were not signed by Dr. Bergquist. Although petitioner advised Dr. Bergquist not to sign them and Dr. Bergquist suffered from Parkinson's disease, we have found that Dr. Bergquist signed the extension agreements. [5] Moreover, as Praxiteles' president and TMP, Dr. Bergquist had authority to sign the agreements. Herring v. Fisher, 242 P.2d 963, 968 (Cal. Ct. App. 1952); Schuyler v. Pantages, 201 P. 137, 138 (Cal. Ct. App. 1921); Bugaboo Timber Co. v. Commissioner *653 , supra at    (slip. op. at 18-19; 22); see General Information Assoc. Partnership v. Commissioner, supra.
Petitioner argues in the alternative that, because Praxiteles dissolved in 1987, Dr. Bergquist had no authority *654 to act its behalf when he signed the extension agreements in 1989 and 1990. This argument has no merit. Under California law, a corporation that has dissolved may still carry out acts necessary to wind up its affairs, including those relating to taxes. Cal. Corp. Code sec. 2010(a) (1990); Callan v. Commissioner, 476 F.2d 509 (9th Cir. 1973), affg. 54 T.C. 1514 (1970). Thus, even though Praxiteles had dissolved in 1987, Dr. Bergquist, as president and TMP, still had authority to execute agreements to extend the period of limitations with respect to Praxiteles' taxable year 1985. Cal. Corp. Code sec. 2001(b), (c) & (h) (1990); see McPherson v. Commissioner, 54 F.2d 751 (9th Cir. 1932), affg. Crosman v. Commissioner, 22 B.T.A. 390 (1931). Cf. C-99 Ltd. v. Commissioner, T.C. Memo. 1993-574 (president of corporate tax matters partner that had its corporate status suspended under California law had capacity to execute agreements to extend the period of limitations). We therefore conclude that the FSAA was timely mailed and was not *655 barred by expiration of the statutory period of limitations. Deductions
It is not clear whether respondent's FSAA covers only a 1-day taxable year beginning and ending December 31, 1985, or whether respondent disregarded the section 1377(a)(2) election and issued the FSAA for the calendar year 1985. In either event, the result we reach in this case would be no different. Praxiteles never acquired the real property that it was supposed to acquire from Schulman. This amounted to a failure of consideration under the "Re-executed Agreement for the Purchase of Real Property" and promissory note, which, although never executed, petitioner asserts were binding. Praxiteles never owed any debt to Schulman with respect to the acquisition property because Schulman never delivered the property. See Farnsworth, Contracts, sec. 8.9 at 581 (1982). Moreover, with the exception of self-serving recitations in the offering memorandum and Praxiteles' 1985 return, there is no evidence in the record of this case that Praxiteles ever paid Schulman interest on a purchase money obligation with respect to the property it was supposed to acquire from him. There is also no persuasive evidence in *656 the record that Praxiteles ever paid the option fees called for in the offering memorandum or any amount for maintenance and insurance. Although Praxiteles may have had some legal expenses and filing fees in 1985, there is no evidence in the record whether or in what amounts such expenses were paid, to whom they were paid, or for what services. See Cleland v. Commissioner, T.C. Memo. 1993-589. We therefore hold that petitioner has failed to carry his burden of proving that Praxiteles was entitled to any of the deductions claimed on its 1985 S corporation return of income. Rule 142(a); C & M Amusements, Inc. v. Commissioner, supra; Sivic v. Commissioner, T.C. Memo. 1993-54. Petitioner's amended petition also asserted that Praxiteles is entitled to a theft loss deduction for 1985 for the full amount of the shareholders' unreturned investment in the corporation. However, petitioner conceded that Praxiteles did not sustain or discover a theft loss in 1985, so no theft loss deduction for 1985 is in issue. Conclusion
Having concluded that the FSAA was not barred by expiration of *657 the statutory period of limitations and that Praxiteles is not entitled to any of the deductions claimed on its 1985 return, we sustain respondent's $ 2,179,217 adjustment in its entirety. To reflect the foregoing, Decision will be entered for respondent. Footnotes
1. Sec. 6244 provides that the TEFRA provisions relating to the assessment and determination of partnership items are extended to the assessment and determination of subchapter S items. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Praxiteles was registered as a tax shelter with the IRS. The tax shelter program in this case, as described in the offering memorandum referred to herein, appears to have been similar to those in Marine v. Commissioner, 92 T.C. 958 (1989), affd. without published opinion 921 F.2d 280 (9th Cir. 1991), and Wolverine, Ltd. v. Commissioner, T.C. Memo. 1992-669↩, where limited partnerships undertook to purchase a building or buildings leased to the U.S. Postal Service, a public utility, or a State governmental unit, and claimed interest deductions equal to the capital contributions of the limited partners.
3. April 15, 1986, was a Tuesday, and April 15, 1989, was a Saturday.↩
4. Dr. Bergquist also signed a Form 872 on Apr. 6, 1990, agreeing to extend the period of limitations to June 30, 1991. It is not clear what effect this had, if any, on the period of limitations.↩
5. An IRS handwriting expert, who had compared Dr. Bergquist's signatures on the extensions with known samples, credibly testified that Dr. Bergquist's signatures were genuine. In addition, under Fed. R. Evid. 901(b)(3) & (4), the trier of fact may identify handwriting by comparing it to known specimens and may consider the distinctive characteristics of the handwriting in conjunction with surrounding circumstances. See Kang v. Commissioner, T.C. Memo. 1993-601; General Information Assoc. Parntership v. Commissioner, T.C. Memo. 1992-583↩. Based on the expert's testimony and the Court's own review of the signatures, the Court finds that the signatures on the extension consents are those of Dr. Bergquist.